141 So. 674

**ALABAMA PRODUCE CO. et al. v. SMITH.**

**8 Div. 271.**

Supreme Court of Alabama.

March 24, 1932.

Rehearing Denied May 26, 1932.

Eyster & Eyster and Wright & McAfee, all of Decatur, for appellee.

A. J. Harris and O. Kyle, both of Decatur, for appellants.

THOMAS, J.

The action of the court in overruling demurrer to the complaint, and in giving written charges and overruling motion for a new trial, is assigned as error.

Plaintiff contends that the facts are, that while he was walking along the eastern edge of the paved highway, known as the Bee Line highway in Morgan county, and going south on the left-hand side thereof, about two feet from the edge of the pavement, an automobile truck approached him from the rear, said truck going south and in the same direction appellee was walking, and being driven by one of the defendants or an agent of the Alabama Produce Company, the appellant; that the truck was negligently operated, causing the defendants or defendants' agent to run the automobile against plaintiff, resulting in the injury complained of; that the truck was being driven at a rapid rate of speed while rounding a curve on said highway, and, while approaching and passing, or attempting to pass, another automobile going south on said highway at or about the place the injury complained of occurred, the driver of the truck gave no signal or warning; that, after the driver of the truck discovered the peril or danger in which plaintiff was placed, he did not stop or check the speed of the truck, nor did he give any signal or warning, and negligently ran such truck against the plaintiff causing the injury complained of. Plaintiff further contends that he did not change his course from the east side of the highway and towards the center of the highway, nor did he attempt to cross said highway in front of said truck of the defendants; that the defendants' agent, the driver of the defend-

ants' truck, did not check the speed of his truck after he saw and appreciated the danger and peril in which plaintiff was placed. We will later advert to the tendencies of the evidence as illustrated by refused charges.

■■ The trial was had on counts 1 and 2 for simple and subsequent negligence. Subsequent negligence is provable under a sufficient count for simple negligence in general terms (Central of Georgia Rwy. v. Lamb, pro ami, 124 Ala. 172, 26 So. 969; Central of Georgia Rwy. Company v. Foshee, 125 Ala. 199, 217, 27 So. 1006), or a count specifically declaring therefor, stating the facts of subsequent negligence shown by the acts so characterized. Louisville & Nashville R. R. Co. v. Young, 153 Ala. 232, 238, 45 So. 238, 16 L. R. A. (N. S.) 301; Louisville & Nashville R. R. Co. v. Calvert, 170 Ala. 565, 54 So. 184. We think count 2 sufficiently averred the facts of subsequent negligence. See, on the requirements of good pleading, Jackson v. Vaughn, 204 Ala. 543, 86 So. 469; Dwight Mfg. Co. v. Holmes, 198 Ala. 590, 73 So. 933; Knight v. Tombigbee Valley R. Co., 190 Ala. 140, 67 So. 238; Tennessee Coal, Iron & R. R. Co. v. Smith, 171 Ala. 251, 55 So. 170. The rulings on demurrer were without reversible error.

■ Approaching a consideration of the refusal of defendants' charges requested in writing, we may observe that the rule is that directed verdicts are proper only where there is no evidence that tends to establish the issue; that general charges should not be given where evidence justifies adverse inference, as when the evidence offered by the party against whom the general charge is requested is accepted as true. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135. And a party to the suit has the right to request instructions to the jury based on the hypothesis of evidence in his favor; thus the respective jury questions may be succinctly stated. Such charges are not objectionable when based on a partial view of the evidence, since the opposite party may request charges founded on a contrary material hypothesis which the evidence tends to establish. Griel & Brother v. Marks, Fitzpatrick & Co., 51 Ala. 566; Walker v. State, 220 Ala. 544, 548, 126 So. 848; Hammil v. State, 90 Ala. 577, 581, 8 So. 380; Munkers v. State, 87 Ala. 94, 98, 6 So. 357; Alexander v. Alexander, 71 Ala. 295; Bradford v. Marbury, 12 Ala. 520, 527, 46 Am. Dec. 264; Clealand v. Walker, 11 Ala. 1059, 46 Am. Dec. 238. It is further established that a charge is not considered abstract when there is a tendency of evidence, "however weak and inconclusive," to support the hypothesis on which it is based (Knowles v. Ogletree, 96 Ala. 555, 559, 12 So. 397; Schaungut's Adm'r v. Udell & Crunden, 93 Ala. 302, 304, 9 So. 550; Steed v. Knowles, 97 Ala.

573, 12 So. 75), and from which the jury can and are authorized to draw an inference supporting that hypothesis; an inference "they believe to be reasonable." McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135, and authorities; Schaungut's Adm'r v. Udell & Crunden, supra.

The foregoing will suffice to test the refusal of defendants' written charge Y under the evidence. It hypothesized that the accident complained of was caused (1) "by plaintiff walking out suddenly from a position of safety on the left hand side of the highway going south, and (2) that without that act on the part of the plaintiff the accident would not have occurred," etc. Do the facts show that plaintiff's act in that behalf was negligent; and is the law on the issue properly stated? The act of the plaintiff is not characterized as negligent. Defendants' answers (c) and (d) tended to show that at the east side, or at the "edge of the paved highway there was ample room for the truck to pass the man (plaintiff) and the other car"; that, just as the truck of defendant started to pass the car ahead, the man that was struck and his companion were likewise ahead and proceeding south; that the car ahead and sought to be passed was on the left-hand side of the highway; that the highway had approximately a northerly and southerly direction, and was divided by a yellow line; that plaintiff was injured by the fact that, as defendant's truck was passing, he suddenly turned to the middle of the road in front of the truck; that the driver immediately put on his brakes, turned to his (driver's) right until he grazed the side of the car ahead, and that it was the left fender of the truck that injured plaintiff; that when the driver of the truck saw plaintiff and his companion, they were on the right side of the highway and to the left of the side on which the truck proceeded.

It may be said further, that there was a shoulder or unpaved margin of highway on the right and left sides; that the car ahead of the truck pulled off the pavement onto the left side of the highway, and plaintiff, injured, fell to the right and partly upon the unpaved highway; that it was up grade to the north of the point of collision; that at or about the time there was also a car approaching from the south on the east side of the highway; there was a tendency of evidence that plaintiff was struck about two and one-half feet from the east margin of the pavement.

The evidence of witness Penn located the pedestrians on the east side of the highway as the truck tried to pass the car ahead, and, as plaintiff was injured, he seemed to be nearly in the center of the road and on the left-hand side of the highway, and the car ahead

(the Ford) was on the western edge of the highway.

Witness Hampton said, among other things, that the pavement was eighteen feet wide; that, as the truck pulled around the car, it made the truck pass "on the east side" of the two men proceeding thereon; that the Ford was on the extreme left side of the highway, and that the defendant's truck "seemed to whip around there" to the other side of the highway.

The witness Scheuing testified: "I drove up to the place of the accident and had a conversation with Smith who said: 'We were about off of the pavement and the truck hit us, the truck was off of the pavement when it hit us.' And when he said that, these two gentlemen ran up and I says: 'There is no use of having any argument, there is the mark and there is no mark where the truck ran off of the pavement, the tracks show you.' And when I said that, I then said: 'Let's put this man in the car.' * * * The truck marks I spoke of while ago looked like they were a foot and half or two feet from the east side (left hand side the way the truck was going) of the highway."

It is further shown that Cheney, plaintiff's companion, heard the approach from the rear of the truck, but denies that its driver gave the usual signals of passage or warning; that the driver of the Ford, or car ahead, acted by pulling his car to the extreme west side of the highway, off or near the west margin of the pavement.

The plaintiff located the place as follows: "I was with Cheney, and we were just walking down the East side of the highway, two or two and a half feet from the East side, and had been walking there for some distance, prior to the time I was hit. Cheney was on my left side and we were walking in an ordinary gait, going South. * * * At the time it hit me, I was something like two and a half feet from the East margin with Cheney still to my left."

And witness Doyle's account was: "When the horn sounded the Ford turned off to the right and at that time I saw the men walking along the highway. I saw the truck undertake to pass the Ford car and these men were on the left-hand side. When the truck started around on the left-hand side of the Ford touring, these men, they were on the left-hand side and as the truck—just as it got even with it something like fifteen or twenty yards behind, one of these fellows, he kindy stepped out a little bit and this other fellow he reached for him, and I didn't see it hit him, but I seen him roll off the left-hand fender of the truck."

Virgil McKee, the driver of the truck, said: "I saw these two men and the Ford car, about two and a half miles South of Hart-selle. I saw the Ford car when I was something like 75 yards from it and soon after noticed these men who were in front of the car on the left of the road going South. Approaching the Ford car I blew my horn two or three long blows and about the second blow the Ford car gave over and when I blew the last long blow about 30 feet from it, it pulled over off of the highway some and I pulled out from behind the car and started to pass. I was about parallel and just straddle of the yellow line. These two men were then on the extreme left of the road. They were walking on the left of the highway, I couldn't say whether they were both on the road or not; they were pretty close to the edge and all of a sudden one of them made a step—two or three steps to the right pretty fast, just as if he started to cross the road. I was so close on him I couldn't do anything but try to stop and I stepped on the foot brake and reached and jerked up my emergency brake all the time and with my left hand I turned the wheel to the right as much as I could, and I grazed the side of the Ford car, and this man, hit him with the left front fender."

Burl McKee, brother of the driver of the truck and a guest in the truck, testified as to the cause of the accident, as follows: "As the truck approached the car it blew three or four times. The last signal about 15 or 20 feet behind the car. It seemed like the Ford commenced slowing down and pulled over to the right of the road, but no part got off until we started around it, it then pulled off of the pavement. The two men were walking side by side on the left-hand side opposite the car and the one on the right started to cross the road like he was going to get in the model 'T'. It was running slow, something like 15 miles an hour. At that time the truck had started around and the Ford pulled out of the road and the man stepped out in the road something like 10 or 15 feet."

The foregoing presents the reasonable tendencies and inferences, or is illustrative of the facts hypothesized in several charges now to be considered under the issues; the discovery of plaintiff's peril and the employment of preventive means at hand, and the respective burdens of proof or the duty of going forward with the evidence (Johnson v. B. R., L. & P. Co., 149 Ala. 529, 538, 43 So. 33); and the further rule of the cases that subsequent negligence is not to be applied in a case where the manifestation of peril and the catastrophe are "so close in point of time as to leave no room for preventive effort." Frazer, Adm'r, v. South & North Ala. R. R. Co., 81 Ala. 185, 200, 1 So. 85; Norwood Transp. Co. v. Bickell, 207 Ala. 232, 234, 92 So. 464.

█ Does it result that there was reversible error in the refusal of defendants' charges requested in writing, Nos. 7 and 3? They required the sufficiency of the evidence to be

that of "reasonable satisfaction," or "reasonable conviction" from "all of the evidence" that the injury complained of was brought about and proximately caused (though the last phrase is not employed in the charges) by the plaintiff's acts, as stated, described and hypothesized in each charge, and had the effect of so instructing. Charge 7 was involved, and we are not impressed that there should be reversal for its refusal. As to charge 3, there was error in its refusal.

Charge L, refused to defendants, was not a "sole proximate" charge, as discussed in Boyette v. Bradley et al., 211 Ala. 370, 100 So. 647; Johnson v. L. & N. R. R. Co., 220 Ala. 649, 127 So. 216. It was more nearly akin to the charge designated as a "mere accident" charge, and considered in Norwood Transp. Co. v. Crossett, 207 Ala. 222, 225, 92 So. 461; City Ice Delivery Company v. Lecari, 210 Ala. 629, 98 So. 901, held in the latter not error to give or refuse. Loreno v. Ross, 222 Ala. 567, 133 So. 251; Smith v. Baggett, 218 Ala. 227, 118 So. 283; Grauer v. Alabama Great Southern R. Co., 209 Ala. 568, 573, 96 So. 915. However, this charge was not a mere accident charge; it uses the words "unavoidable accident," and should have been given. Norwood Transp. Co. v. Crossett, supra. The foregoing cases deal with a mere accident as distinguished from an unavoidable accident.

It may be said that it was for the jury to find that at the time the driver had violated or was violating a penal statute, and it was therefore immaterial what a reasonable man would have done. We are agreed with counsel that if defendant's agent, driving the truck immediately before the accident occurred, did everything that an ordinarily prudent man (so driving) would have done under like circumstances, it foreclosed the inference of the violation of a penal law, or rule as to speed, etc., and a reasonably prudent man will be presumed not to have exceeded the speed limit fixed by law. Crisp v. State, 21 Ala. App. 449, 109 So. 282; Racine Tire Co. v. Grady, 205 Ala. 423, 88 So. 337; Vansandt v. Brewer, 209 Ala. 131, 95 So. 463; 67 A. L. R. 100, 112, 115, Note; 20 R. C. L. 112, § 98.

Since the case will be retried, we may say that charge Y was properly refused as pretermitting negligent conduct of defendants, if such there was, at the time and immediately preceding the accident, and further assumes that plaintiff's act in question was negligent.

The questions of fact were for the jury. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

It is unnecessary to consider questions presented by the motion for a new trial.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.