49 So.2d 902

### WILLIAMS v. ROCHE UNDERTAKING CO.

1 Div. 409.

Supreme Court of Alabama.

Dec. 14, 1950.

Rehearing Denied Jan. 25, 1951.

58

McCorvey, Turner, Rogers, Johnstone & Adams, of Mobile, for appellant.

Inge, Twitty, Armbrecht & Jackson, of Mobile, for appellee.

60

BROWN, Justice.

The plaintiff (appellee) sued the defendant (appellant) in an action on the case for negligently running his (defendant's) automobile into plaintiff's automobile-hearse at the intersection of George Drive and another drive, not stated, in Magnolia Cemetery in the City of Mobile, Alabama, while said hearse "was moving north on said George Drive on June 17, 1947."

The complaint contains three counts each charging negligence in general terms sufficient to authorize a recovery for simple initial negligence and subsequent negligence. Central of Georgia Ry. Co. v. Foshee, 125 Ala. 199, 27 So. 1006; Alabama Produce Co. v. Smith, 224 Ala. 688, 141 So. 674.

The defendant demurred separately to each count of said complaint on grounds, among others, that (1) the place at which the "alleged collision occurred is not described with sufficient certainty"; (2) shows no duty which "defendant owed the plaintiff" and (3) that "It does not appear from the allegations of said complaint that there was any causal connection between the defendant's alleged negligent operation of an automobile and the alleged collision."

 Conceding that the first stated ground of the demurrer was well taken, Alabama Great Southern Ry. Co. v. Sheffield, 211 Ala. 250, 100 So. 125, this point was not stressed nor insisted upon in argument and we will not predicate a reversal on the overruling of the demurrer because the point was not stressed in argument and the evidence offered on the trial shows without dispute that the defendant suffered no injury from the indefinite averment. The other two grounds of demurrer are not well taken, the second for the reason that the averments of the complaint show that "both of said roadways were open to and commonly used by the public", which shows that the plaintiff was at least a licensee and hence defendant was under duty not to negligently run his automobile against plaintiff's hearse. The third point raised by the demurrer is not well taken for the reason that each of said counts averred that "defendant negligently ran his said automobile into plaintiff's said hearse and his said negligence proximately caused said damage to plaintiff's vehicle." This averment shows causal connection and proximate cause of the injury. Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A.L.R. 1.

 The circuit court overruled the plaintiff's demurrer to the defendant's plea 4, which pleaded the violation of the city ordinance as a basis for contributory negligence on plaintiff's part, and sustained the demurrer to defendant's pleas 5 and 6. For aught appearing from the averments of defendant's plea 5 the plaintiff's servant was in said cemetery in performance of his duties as a mortician using said hearse in the burial of the dead. The court, therefore, did not err in sustaining the demurrer to said plea 5. Pankey v. City of Mobile, 250 Ala. 566, 35 So.2d 497. The defendant's plea 6 is predicated on the violation of the statutory "rule of the road" applicable to public highways. Code 1940, Tit. 36, § 1(p); Stewart v. Smith, 16 Ala. App. 461, 78 So. 724. Under the pleadings and evidence in this case, it is governed by the principles of the common law. The appellant in brief concedes that "the evidence fully sustains the allegation as to the common use by the public" of said driveway, as alleged in the complaint.

The evidence showed without dispute that said driveway on which the plaintiff's hearse was being driven on the occasion of

the alleged injury was limited to use in the daytime for vehicular driving and was closed to the public at night by means of gates at each end of the cemetery. The plaintiff (appellee in brief) states, "and we have stated above neither roadway was open to the public as a matter of right and, therefore, neither was a public highway."

The plaintiff's agent Mr. Newell testified that he was 23 years old and that on the 17th of June, 1947 about four o'clock in the afternoon he was driving the appellee's hearse returning from a funeral in Pinecrest Cemetery and was going through Magnolia Cemetery northerly on the George Drive and as he approached the intersection of George Street and Ann Street Road, he noticed a car on his right; that he was then about 2 car lengths from the intersection and this other automobile driven by Williams, the defendant, was around 4 car lengths away and as Newell approached the intersection Williams looked north to his right *but did not look to the south.* "There was no horn or anything." That he went on across and after he saw Mr. Williams' car was coming on out, he cut over to his right to try to get out of Mr. Williams' way; that he (Williams) hit "my right rear fender"; that he (Newell) turned into the cemetery from Virginia Street before the accident; that it was a short turn and he had to stop to go into the gate and he put the hearse in low gear and then into second gear and then into high gear; that when he first saw the Williams' automobile he was within about 2 hearse lengths from the intersection, the hearse traveling about 20 to 25 miles per hour. That Williams drove his car into the intersection at the rate of twenty-five or thirty miles per hour; that the hearse was then practically across the intersection when Mr. Williams' car entered. Williams was then facing north and looking toward the north. That Mr. Williams never did look in his direction before the accident. That the vehicles collided on the north side of the intersection. That the front of Williams' automobile hit the rear of the hearse when it was on the north side of the intersection and the impact took place. That at the time Mr. Williams entered the intersection without sounding his horn. That the center of the front of Williams' car hit the right rear fender and rear wheel of the hearse. That the impact threw the witness out of the hearse, turned the hearse completely over and knocked it against a water hydrant on the west side of George Drive north of the intersection.

The evidence further goes to show that the hearse turned over more than once and came to rest across George Drive from 75 to 100 feet north of the intersection. The evidence shows that George Drive is 30 feet wide. Several photographs of the scene of the accident and the condition of the hearse after the collision were offered in evidence by the plaintiff. The photographs show considerable damage to the hearse. Testimony of other witnesses examined tended to corroborate the statement of Newell as to the speed of the hearse and also as to the speed of the Williams' car and one witness, a laborer working in the cemetery, testified that the hearse passed him 250 feet from the intersection.

Defendant testified that he stopped at the intersection before entering, that he looked in both directions but could not see far in the direction from which plaintiff's hearse was approaching because of bushes in his line of vision. He further testified that he eased slowly out into the intersection still in low gear and that he did not see the hearse until too late to stop. That the hearse passed his fender in front of his automobile going 50 miles per hour, struck and sheared off his fender and front end of the shell that protects the radiator. There was evidence going to show that defendant's automobile passed across the intersection and came to rest against the concrete curb at the northwest corner of the intersection.

The ordinance pleaded in the third count of the complaint and in defendant's special plea of contributory negligence 4, was in evidence. Said ordinance provides: "261.—*Automobiles Authorized to Enter.*—Automobiles are authorized to enter Magnolia Cemetery. This right to use said cemetery by automobiles is authorized solely and exclusively for the purpose of allow-

ing persons so desiring to go to burial lots in said cemetery, and no automobile shall be allowed in said cemetery unless used in transporting a person or persons who desire to visit burial lots, and all such automobiles shall stop in said cemetery for a period of time not less than five minutes and discharge their passengers. Automobiles, while in said cemetery, shall not exceed in speed the rate of six miles per hour."

The trial resulted in a jury verdict for the plaintiff assessing its damage at $2500.00 upon which, after motion for a new trial made and overruled, the judgment of the court from which this appeal is prosecuted, was rendered.

■ The testimony of the witness Newell if believed shows that he and Williams were both exceeding the speed limit prescribed by the ordinance and hence were violating the condition set forth in the ordinance upon which the license to use said driveway was predicated. And as to the owner of the cemetery, if privately owned, and to the public for whose benefit the ordinance was adopted, they became wrongdoers. Snedecor v. Pope, 143 Ala. 275, 39 So. 318; 38 Am. Jur., § 105, p. 767 (last par.); Susquehanna Power Co. v. Jeffress, 159 Md. 465, 150 A. 788, 71 A. L.R. 1198; Ciarmataro v. Adams, 275 Mass. 521, 176 N.E. 610, 75 A.L.R. 1175. Nevertheless, if Newell (plaintiff's agent or servant) was guilty of negligence in consequence of his violating the city ordinance, if such negligence did not proximately contribute to the collision but merely created a condition upon which defendant's negligence (if defendant was guilty of negligence), operated to proximately cause the damage to plaintiff's hearse, the plaintiff was entitled to recover under the last clear chance doctrine. Brown Hauling Co. v. Newsome, 241 Ala. 300, 2 So.2d 782.

In Southern Railway Co. v. Shelton, 136 Ala. 191, 34 So. 194, 201, the court speaking through Chief Justice McClellan observed: "Shelton was on the track of the crossing, 75 feet in front of the engine. He remained there till the engine reached him and ran over and killed him. The engineer and fireman were all the while looking ahead. * * * Very clearly, if neither of them did see him standing there on the track while the engine reduced the distance to him from 75 to 2, or even to 8, feet, the jury were authorized to find that his position was one of manifest peril, and that a sense of it was impressed upon the enginemen. * * * Shelton was in a position of manifest peril on the track in front of the engine. He was in view of the enginemen. They were looking along the track where he was. Therefore they must have seen him, and this though they testify that they did not. Ensley Railway Co. v. Chewning, 93 Ala. 24, 31, 9 So. 458; Louisville & Nashville Railroad Co. v. Trammell, 93 Ala. 350, 354, 9 So. 870."

In Birmingham Railway & Electric Co. v. Smith, 121 Ala. 352, 25 So. 768, 769, the Court speaking through Mr. Justice Tyson observed: "But was it true that when the plaintiff begun to turn his horse and buggy for the purpose of crossing the tracks, a distance of from 25 to 35 feet from the track upon which the collision was had, that the car, moving at a rate of speed of 5 to 6 miles an hour in the direction of the buggy, was only 100 or 125 feet away, and nothing to prevent the motorman seeing it? If true, would the jury be authorized to find that the motorman saw the buggy when it was approaching the track for the purpose of crossing it? If he saw the horse and buggy approaching the track, for the purpose of crossing it,—knowing, as he was bound to know, that its occupants could not see or hear the approaching car, on account of the top of the buggy being enclosed by curtains—in time to stop the car before the collision, his conduct amounted to that reckless indifference or disregard of the natural and probable consequences of his acts to which may be imputed to him the same degree of culpability as wantonness, and must be held the equivalent of willful injury."

To the same effect is Mobile Light & R. Co. v. Gadik, 211 Ala 582, 100 So. 837, 839, where the court observed: "An automobile seen approaching a crossing at a safe distance and at usual speed does not within itself suggest peril. The driver may

be taken to have the use of his senses, and to exercise the ordinary care which the occasion demands. But if the automobile continues to approach without slowing up, or the driver is seen to be inattentive, so that the situation suggests a probable collision unless prompt measures are taken, the duties of the motorman begin. One of the duties is usually to give a warning signal. If the automobile driver appears inattentive to the approach of the street car, this is an urgent duty. It should be given before it is too late to avoid a collision. If the motorman sees he cannot stop his street car short of the point of collision the giving of warning signals becomes more imperative."

In Illinois Central R. Co. v. Martin, 213 Ala. 617, 105 So. 805, 807, the plaintiff was walking along in the same direction as the train on a path running parallel to the tracks for some distance, then turned diagonally onto the main line in front of the train, had crossed to the outer end of the cross-ties, and taken a few steps thereon when she was struck by the locomotive. Evidence tended to show that plaintiff was in a position of peril while walking beside the tracks before turning to cross them. The court then observed: "Seeing him in a place of rapidly approaching danger requires that a watch be kept on his movements. If he has his back to the train, seemingly unconscious of its approach, the first duty is to give warning. If other noises drown the noise of the train, this duty is the more apparent. * * * To illustrate by the case before us: If the plaintiff was seen walking along and dangerously near the track, and when 200 feet away turned onto the main line, a position of greater danger, giving no sign that he was aware of the train's approach, it was then a matter of five seconds when the engine going at 30 miles per hour would be upon her. She was in a position of peril within the meaning of the law calling for the exercise of all the preventive means at hand to conserve her safety."

In Atlantic Coast Line R. Co. et al. v. Flowers, 241 Ala. 446, 451, 3 So.2d 21, 24, it was said, the court speaking through Mr. Justice Foster:

"The mere approach of intestate toward a railroad at a crossing at a speed of 5 or 6 miles an hour with no indication of the fact that the driver was not aware of the approaching train, it was held does not indicate that he is in a position of peril. Bason v. Alabama G. S. R. R. Co., 179 Ala. 299(2), 60 So. 922. But if the traveler gives any indication of inattention or of unconsciousness of his surroundings, it has been said that the trainmen should take immediate action; but not if there is nothing to indicate that he is not possessed of his senses or conscious of his position. Illinois C. R. Co. v. Martin, 213 Ala. 617(4, 5), 105 So. 805; Mobile L. & R. Co. v. Gadik, 211 Ala. 582, 100 So. 837. This is illustrated when one is walking toward a track with his back toward the engine, apparently oblivious of the approach of the engine. Southern Ry. Co. v. Montgomery, 229 Ala. 456, (8), 157 So. 854.

"And that unless the contrary is manifest, the trainmen could assume that the automobile driver would do his duty and stop and not attempt to cross in dangerous proximity to the approach of the train. De Bardeleben v. Western Ry. of Alabama, 227 Ala. 553, 151 So. 56; Southern Ry. Co. v. Miller, 226 Ala. 366, 147 So. 149; Sloss-Sheffield S. & I. Co. v. Peinhardt, 240 Ala. 207, 199 So. 33. But that if the speed of the approaching car and its distance to travel are such as to manifest a *probability* that it will not stop or it is in *apparent existing danger* in that respect, the duty of trainmen then begins if by some warning or slackening of speed the collision may be averted. Johnson v. Louisville & Nashville R. R. Co., supra [227 Ala. 103, 148 So. 822]; Id., 240 Ala. 219, 198 So. 350." [Italics supplied.]

The basis for the application of this doctrine of subsequent negligence is not furnished by the testimony offered for plaintiff which shows that Williams looked only to the north away from the direction the hearse was approaching the intersection. It does not show that defendant saw the approaching hearse or that he had any knowledge of its approach. Honeycutt v.

Birmingham Electric Co., 236 Ala 221, 181 So. 772; Johnson v. Louisville & N. R. Co., 227 Ala. 103, 148 So. 822.

While the defendant testified that he stopped before reaching the intersection and looked in both directions and did not see the hearse approaching because of bushes or vines obstructing his view, the photographs showing the *locus in quo* go to show that the bushes are a considerable distance from the intersection and that there is a wide space between the corner where the bushes appear and the traveled lane of George Street in which nothing appears which would obstruct the view of a person approaching from the east on Ann Street Road and the evidence is without dispute that the hearse was on George Drive approaching the intersection at about 4:30 o'clock on June 17th, 1947, daylight, and under our decisions it was a question for the jury whether or not the defendant did or did not see the hearse approaching in time to have stopped his car or checked the speed to allow the hearse to clear the crossing.

■ On the other hand, if Williams reached the intersection ahead of the hearse and stopped and looked in both directions and then proceeded to cross and the hearse approached at a high speed and struck the front of Williams' automobile and "sheared the bolts off the fenders" and "snatched" or "swiped" the fender and the "shell" from the front of defendant's automobile, defendant was without negligence and the plaintiff was not entitled to recover. On the whole the case was one for jury decision and the several general affirmative charges requested by the defendant were refused without error.

■ Charges 5, 12 and 14, refused to the defendant, are predicated on the statutory "rules of the road," which as we held are not applicable to the driveway in said cemetery and were refused without error.

■ The measure of care required of the defendant under the applicable principles of common law was the care a reasonably prudent man would exercise in like circum-stances. Reaves v. Maybank, 193 Ala. 614, 69 So. 137.

■ The only insistence made by the appellant as to charges 2, 5 and 6 given at the instance of the plaintiff in writing is that they are misleading. These charges are treated in bulk on that theory. If the charges were merely misleading, as the appellant insists, then he should have asked for explanatory instructions. Harrison v. Mobile Light & R. Co., 233 Ala. 393, 171 So. 742; Birmingham Ry. Lt. & Pr. Co. v. Friedman, 187 Ala. 562, 65 So. 939; Alabama G. S. R. Co. v. Smith, 178 Ala. 613, 59 So. 464.

■ The defendant offered to show by two witnesses, who had examined the two vehicles after the collision but who did not see the collision or either of said vehicles moving before it occurred, the speed at which the plaintiff's car was moving at the time of the collision. Some of the questions called for opinion evidence or conclusions of the witnesses based upon the physical condition of the defendant's automobile after the collision. We are of opinion that such evidence would have been an invasion of the province of the jury. "The jury, no matter how inexpert, understood as well as the witness, no matter how expert." Crotwell v. Cowan, 236 Ala. 578, 184 So. 195, 200. In the annotation in 133 A.L.R. p. 726, it was observed: "Although there is some conflict among the few cases which have considered the question, a majority of them have refused to allow witnesses to give expert evidence, based on the appearance or condition of an automobile after an accident, as to the speed of the car at the time the accident occurred, upon the grounds that the witnesses were not qualified as experts, or that their conclusions, if given, would amount to a mere guess."

In Jackson v. Vaughn, 204 Ala. 543, 86 So. 469, 470, Mr. Justice Thomas stated: "Several exceptions were reserved to the introduction of evidence that may not be presented on a second trial. It is sufficient to say that witness Morris, being qualified to give an expert opinion (Miller v. Whittington, 202 Ala. 406, 80 So. 499, 503;

Birmingham & A. Ry. Co. v. Campbell, 203 Ala. 296, 82 So. 546), may answer how fast such car was proceeding, skidding, the distance indicated and under conditions stated."

In a later case the same Justice observed: "The rate of speed of the truck when leaving Uniontown had no tendency to illustrate its speed several miles therefrom and at the place of the accident; and the answer, 'driving fast * * * between 35 and 50 miles an hour,' of witness Long, should have been excluded on defendant's motion, due objection having been interposed, overruled and exception taken before the answer. Each case depends upon its own facts. Townsend v. Adair, 223 Ala. 150, 134 So. 637; Bains Motor Co. v. Le Croy, 209 Ala. 345, 96 So. 483; Davies v. Barnes, 201 Ala. 120, 77 So. 612; Whittaker v. Walker, 223 Ala. 167, 135 So. 185. The witness Long was allowed to describe the 'skid marks' on the road made by the truck; had qualified to express his opinion of how such marks were made by the loaded truck which he knew was loaded with cotton seed, and testified that 'similar marks could be caused by excessive load or swaying of the load.' In this there was no error. Jackson v. Vaughn, 204 Ala. 543, 86 So. 469." Hodges v. Wells, 226 Ala. 558, 147 So. 672, 674.

This statement of the rule does not sustain the defendant's (appellant's) contention that an expert witness who had not observed the movement of the vehicles could state the speed of such vehicles at the moment of the collision. Nor is there anything in the statement of the rule in Alabama Great Southern Railroad Co. v. Molette, 207 Ala. 624, 93 So. 644, 647, to the contrary, where the court observed: "It was relevant to show the nature and extent of the injuries to the truck as tending to disclose how and with what degree of force, and so with what speed, defendant's train was driven against the truck; speed being an element of the negligence charged to defendant."

Neither does the statement of the court in Griffin Lumber Co. et al. v. Harper, 247 Ala. 616, 620, 25 So.2d 505, 509, support the above contention. The court there observed: "The physical aspects of the collision with the curb wall justify a conclusion that the speed of the truck had become very high when the impact occurred. In fact, there is expert testimony to the effect that at the moment of impact the speed of the truck was about 60 miles an hour. But, whether this was the result of the truck driver's wanton misconduct, or whether it might have resulted from mechanical causes connected with the car, cannot be determined from the evidence. * * *" There appears to have been no objection to the "expert testimony." The foregoing statement clearly shows that an expert witness cannot testify as to speed at the moment of such impact and in the case last cited the court held that it was based on mere speculation and the verdict of the jury was set aside.

While the annotations on the subject show that expert evidence as to rate of speed of a vehicle has been admitted based on facts other than personal observation, the well settled general rule is that "the estimate of the speed at which an automobile, locomotive, or other object was moving at a given time is viewed as a matter of common observation rather than expert opinion, and it is accordingly well settled that any person of ordinary ability and intelligence having the means or opportunity of observation is competent to testify to the rate of speed of such a moving object." 20 Am.Jur. 678, Evidence, § 805.

"However, opportunity of observation by a witness being a necessary element of competency, where a witness had no opportunity to observe a vehicle so as to form any opinion as to its speed, he is generally held incompetent to give an estimate of its speed." 156 A.L.R. p. 384.

In one of our cases, where the witness had a brief opportunity to observe the speed of the vehicle, his opinion as to its speed was held admissible. The momentary observation going to the weight of the testimony. Jack Cole, Inc., v. Walker, 240 Ala. 683, 200 So. 768.

An estimate of the speed at which an automobile, locomotive or other object was

66

moving at a given time is generally viewed as a matter of common observation rather than expert opinion, and accordingly any person of ordinary ability and intelligence, having observed the speed, is qualified to testify as to its rate. Cedar Creek Store Co. v. Steadham, 187 Ala. 622, 65 So. 984; Edwards v. Earnest, 208 Ala. 539, 94 So. 598; Vredenburgh Saw Mill Co. v. Black, 251 Ala. 302, 37 So.2d 212. This does not mean that a witness, though an expert, may not testify as to speed if he observes same, but that when he does he is testifying as a lay witness or non-expert. 20 Am.Jur. p. 678, Evidence § 805; Annotation L.R.A. 1918A, p. 706 and cases cited.

▮ Another phase of the rule is: "It is also well settled that: 'Where a fact cannot be reproduced and made apparent to the jury, a witness may describe the fact according to the effect produced on his mind; or if, from the nature of a particular fact, better evidence is not attainable, the opinion of a witness, derived from observation, is admissible. Mayberry v. State, 107. Ala. 64, 18 So. 219, 220; Watson v. State, 217 Ala. 164, 115 So. 101; Baugh v. State, 218 Ala. 87, 117 So. 426; Diamond v. State, 219 Ala. 674, 123 So. 55; Stinson v. State, 223 Ala. 327, 135 So. 571; Alaga Coach Line, Inc. v. McCarroll, 227 Ala. 686, 151 So. 834, 92 A.L.R. 470; 22 C.J. p. 554, § 655." Rowe v. Alabama Power Co., 232 Ala. 257, 259, 167 So. 324, 326.

▮ It was not permissible for the defendant to prove that some one had paid him for the damage to his automobile. Such evidence is not relevant or material to the issues in the case on trial.

▪▮ The only argument made by the appellant as to his assignments of error 7 and 8 is stated in brief as follows: "Assignments of error 7 and 8 deal with the Court's having rendered judgment in favor of plaintiff and its refusal on Appellant's motion to set aside the judgment and grant a new trial. The grounds for Appellant's motion for a new trial are set forth on pages 14–17 of the Transcript." This statement is insufficient to warrant consideration of those assignments of error and appellant can take nothing by said assignments.

We find no reversible error in the record. Affirmed.

FOSTER, LIVINGSTON and SIMPSON, JJ., concur.

LAWSON and STAKELY, JJ., concur in the result.