Appeal by plaintiff, Sandra F. Whitmore, from a judgment for defendant, Herman Stanley Burge, based upon a jury verdict in plaintiff's action against defendant arising out of an intersection collision between their automobiles.
Plaintiff's complaint alleged negligence and wantonness and prayed for damages for personal injuries and property damage. The defendant's answer denied either negligence or wanton conduct, and alleged contributory negligence.
On trial, each party moved for a directed verdict at the close of plaintiff's evidence. These motions were denied. At the close of the defendant's evidence, each party again moved for a directed verdict, and, again, each motion was denied. Additionally, after considering arguments of counsel, the trial court dismissed plaintiff's count alleging wanton conduct, and submitted the case to the jury upon the theories of negligence and contributory negligence. Ultimately, the jury returned a verdict for the defendant. Plaintiff's post-trial motions for a new trial or JNOV and to amend or *Page 1322 
alter the verdict were denied, and this appeal followed.
On appeal, plaintiff insists that the trial court erred in refusing to grant her motions for a directed verdict and for JNOV, that it erred in refusing to submit to the jury the issue of wantonness, and that it also erred in admitting into evidence certain testimony of defendant's wife referable to a posed photograph.
The facts of the case are undisputed. According to the plaintiff, she was traveling east on Warrior River Road within the City of Hueytown, approaching the intersection of High School Road and Cherry Avenue. She had a cup of coffee in one hand and was driving with the other. Travelling between 35 and 40 m.p.h., in a zone with a speed limit she knew to be 35 m.p.h., she could see the front of defendant's vehicle sitting in the intersection for a distance of one-quarter of a mile. At the time in question, the intersection was controlled by an improperly functioning traffic signal that was flashing "caution [yellow]" in plaintiff's direction and "stop [red]" in the direction of defendant's vehicle, which was stopped at the intersection. According to plaintiff:
 "A. . . . After I got around the curve I saw him sitting there, and I noticed he kept sitting there, and sitting there. So as I got closer I started slowing down because I was wondering why he sat there so long.
 "Q. Let me ask you this: You observed him from the curve, you saw him sitting there and he didn't go through, and you knew he had time to go through.
"A. Yes, sir.
 "Q. And you were looking at the blinking, caution light?
"A. Yes, sir.
 "Q. Let me ask you, when you came around the curve there and you traveled there for some distance, you became concerned about his car sitting there, didn't you?
"A. Yes, sir.
 "Q. As a matter of fact, you stated that 'I just had this feeling that he was going through.'
"A. Going to hit me when I saw him.
 "Q. All right. But you just had this feeling that he was going through. You saw him there from the curve and you were travelling and he was still sitting there a quarter of a mile away, and he was still sitting there.
 "A. That's why I got that feeling because he was still sitting there.
"Q. And you thought he was going through.
"A. Yes, sir; and I slowed down.
 "Q. And you were looking at a double flashing caution light; is that correct?
"A. Uh-huh.
"Q. Could you see all of his vehicle?
 "A. No, sir. I could just see that there was a car there, just the front of the white.
"Q. You could see the front then, couldn't you?
"A. Uh-huh.
". . .
 "Q. You may not have been able to see Mr. Burge sitting in the vehicle, but you could see the front of the vehicle.
"A. I saw a car.
 "Q. Okay. And you got concerned and you could see that some quarter of a mile away.
"A. (Witness nods head.)
 "Q. All right. You could see at least some part of the vehicle sitting there. You knew it was a vehicle sitting there.
"A. Yes, sir.
"Q. And you knew it had time to go through?
"A. Yes, sir.
 "Q. And you became concerned that it may go through; correct?
"A. Yes, sir.
"Q. Did you blow your horn?
"A. No, sir.
"Q. Did you stop?
"A. No, sir; I had the right of way.
 "Q. You had the right-of-way. You didn't stop. You knew you were looking at a double caution light. You didn't stop; you didn't blow a horn.
"A. No, sir. *Page 1323 
 "Q. You didn't try to change your course of travel? Did you?
 "A. I slowed up to see what was — and then I saw him coming at me, I speeded up.
 "Q. But you did not try to change your course of travel.
"A. I had nowhere to go. Where would I go?
 "Q. Just answer my question. Did you try to change your course of travel?
"A. No, sir. I had nowhere to go.
 "Q. And you could see this vehicle and you thought it was going through.
"A. Yes, sir.
"Q. Let me ask you this: What did you do?
 "A. I slowed up when I saw him sitting there, and then when I saw him coming at me, and he took off real fast, I just pushed my accelerator to the floor-board trying to go, because he would have killed me if he had hit me, if I hadn't done that."
The defendant described his movements at the time and place in question as follows:
 "Q. On this morning when you approached this intersection, did you see a traffic control device?
"A. Yes, sir.
"Q. What did you see there?
"A. Lights blinking red.
"Q. The light blinking red, was that facing you?
"A. Yes, sir.
"Q. What did you do?
"A. I stopped.
 "Q. In relation to the intersection there, and in relation to the edge of the pavement of Warrior River Road, where did you stop?
 "A. Just as close to the curb on my right lane and about six feet from the pavement on Warrior River Road.
"Q. And what did you do at that time?
"A. Waited for that light to turn green.
"Q. Was it blinking?
"A. Blinking red.
"Q. Did it ever turn green?
"A. No, sir.
 "Q. After you were there watching the light, what, if anything did you do?
 "A. After watching the light, I waited to see if it had time to make the cycle; never did do it, so some horn behind me began to blow and I still didn't move, waiting again. And I waited, and waited, and waited, and I saw two cars go in front of me traveling at a very slow rate of speed.
"Q. Where were they travelling?
"A. They were going west.
"Q. What did they do there at the intersection?
 "A. They just went straight on through — these two first ones went straight on through like you're going down to Concord. Later on, one coming from west to east on Warrior River Road turned to the right under that traffic light, and it's still blinking yellow on Warrior River Road and red on Cherry and High School Road. And two more came going from east to west and turned to the right, which would be to my left.
"Q. Right beside you?
"A. Right beside of me on my left side.
 "Q. And that would be going down Cherry; is that right?
"A. They were going down Cherry; that's right.
 "I looked thisaway; I looked straight; I looked thisaway; I looked back watching the two lights there because there had been times that one would be out. There's two of them blinking the red, and waiting on the time. And the second time, people started blowing behind me.
"Q. What did you do when they started blowing?
 "A. Looked at the lights again thisaway, thataway, thisaway and back here, and then eased out into the street.
 "Q. Were the vehicles you say were blowing, where were they located in relation to the vehicle you were in?
"A. Right behind me. *Page 1324 
"Q. After they started blowing, what did you do?
 "A. Eased out going straight across and would be entering into High School Road.
"Q. At that time is when the accident occurred?
"A. That's the time the accident occurred."
Burge testified that his car had reached a speed of 10 to 12 m.p.h. when the collision occurred. He did not see the plaintiff coming, and did not look in her direction after he entered the intersection.
An investigating officer, Richard Waldron, testified that the accident occurred "more or less in the middle of the intersection on High School Road and Cherry Avenue, but on the eastbound lane of Warrior River Road." Waldron testified to the presence of several signs and a utility pole that could obstruct the view of one in the position of defendant: "If you're sitting back from the intersection — I'll say the intersection is the line that comes across here — it forms a square. And if you're sitting back away from the intersection, they could." He added that one could see both ways by pulling up to the point of the intersection. Waldron also testified that he was acquainted with defendant Burge, and that Burge had trouble seeing "a little bit." He based his conclusion on an occasion five years before in Mr. Burge's business when Burge told him "he couldn't see too good close up."
An eyewitness to the accident, Jimmy Hayes, testified that he saw Mr. Burge "sitting at the red light," and then saw that Burge "approached out slowly and then approximately about halfway across the lane, he speeded up." According to Hayes, both vehicles entered the intersection at the same time. He added:
"Q. What drew your attention to his vehicle?
 "A. What drawed my attention to him, he didn't act like he was sure if he should go or not go.
"Q. Well, did you see some vehicles behind him?
 "A. About two or three minutes after that one pulled up behind him and a truck pulled up behind him.
"Q. Did they blow?
"A. Yes, sir, the lady in the car behind him.
 "Q. Did that draw your attention to the intersection?
 "A. Yes, sir. I wanted to get out there and tell her to stop.
"Q. And they sat there a good little while?
"A. They sat there about two or three minutes."
Hayes testified to observing plaintiff's automobile approaching the intersection at from 35 to 45 m.p.h; his best estimate was 45 m.p.h. He also saw Burge before he pulled out in the intersection:
 "A. All he was doing was looking up at the red light and when he looked down, he looked a little bit to his right and a little bit to his left, and then he looked back at the light.
"Q. And that's when he pulled out?
 "A. Yes, sir, after about three blows from the lady behind him."
Plaintiff contends that defendant abandoned his plea of contributory negligence by acknowledging through the following testimony that plaintiff had the right of way:
 "Q. But I take it from something you said that you knew the cars traveling Warrior River Road had a yellow blinking light?
"A. Yes, sir.
 "Q. And, of course, you would know that they would have the right-of-way on that occasion; is that correct?
"A. Well —
 "Q. They had been traveling back and forth in front of you for several minutes, had they not?
 "A. They had been going in through there at a very low rate of speed."
Contrary to plaintiff's argument, it was plaintiff's counsel's question, not defendant's answer, that suggested who would have had the right-of-way at the time. Defendant Burge did not answer the question *Page 1325 
dealing with the right-of-way. His answer to the next question was, at least, unresponsive.
Plaintiff also contends that the following testimony of Burge was an "admission" that plaintiff was not at fault:
 "Q. Can I understand, then, from what you say here today that in your opinion the fault of this accident belonged to the municipality or whoever allowed these signs to be there?
 "A. If the light had been working, everybody obeying it like I try to, it would never have happened.
 "Q. And did you tell me once before that the only fault of this accident is the City of Hueytown and Jefferson County?
 "A. That's right. Had those signs been out of the way so you could see and the light been working perfectly, it would have never happened."
We respectfully suggest that this postulation was simply an assumption of hypothetical circumstances, and consideration of it along with defendant's other testimony does not lead to the reasonable conclusion that defendant had abandoned his defense. At most, it was only other testimony to be considered by the triers of fact.
On motion for a directed verdict, the entire evidence must be viewed in a light favorable to the opponent, and when a reasonable inference may be drawn adverse to the proponent, a directed verdict motion is properly refused. Hickox v. VesterMorgan, Inc., 439 So.2d 95 (Ala. 1983). In a civil case, a jury question is presented when any reasonable inference from the evidence supports the non-moving party. Draughon v. GeneralFinance Credit Corp., 362 So.2d 880 (Ala. 1978).
The gist of plaintiff's claim against the defendant was that the defendant negligently or wantonly entered the intersection, in violation of the rules of the road,[1] crossed into her lane of travel, and struck her automobile. Insofar as her negligence claim is concerned, under the defendant's defense of contributory negligence, she maintains that she was free from any negligence that proximately contributed to the accident. But it is shown that she was steering with one hand, travelling between 35 and 45 m.p.h., had observed the defendant's vehicle at the intersection from a quarter of a mile away, that her entrance to the intersection was controlled by a flashing "caution" signal, that she did not sound her car horn, did not stop even though she was concerned that defendant's vehicle was going on through the intersection, and, in fact, speeded up instead of attempting to stop. This evidence, we respectfully observe, made a jury question on the issue of contributory negligence. Indeed, the jury could have concluded from this evidence that, under the circumstances, even if Mr. Burge negligently entered the intersection, nevertheless, a reasonable person in plaintiff's position would have averted the apparent danger by some warning *Page 1326 
or appropriate slackening of speed to avoid a collision.Williams v. Roche Undertaking Co., 255 Ala. 56, 49 So.2d 902
(1950). As stated in Cox v. Miller, 361 So.2d 1044, 1048
(Ala. 1978):
 " 'The motorist must exercise due care to anticipate the presence of others upon the highway and not to injure him after he is aware of his presence. . . . He is chargeable with knowledge of what a prudent and vigilant operator would have seen, and is negligent if he fails to discover a vehicle which, . . . he could have discovered in time to avoid the injury in the exercise of reasonable care.' (Emphasis added [in Cox, quoting Cooper v. Agee, 222 Ala. 334, 336-37, 132 So. 173, 174-75 (1930)].
 "Due care is relative always and much depends upon the facts of the particular case. Tyler v. Drennen, 255 Ala. 377, 51 So.2d 516 (1951)."
Accordingly, we find that the trial court did not err in refusing to grant a directed verdict or JNOV to plaintiff on the negligence count.
Did the trial court err in refusing to submit the issue of Burge's wantonness to the jury?
In Rosen v. Lawson, 281 Ala. 351, 356, 202 So.2d 716, 720
(1967), wantonness is explained:
 "In wantonness, the party doing the act or failing to act, is conscious of his conduct, and without having the intent to injure, is conscious, from his knowledge of existing circumstances and conditions, that his conduct will likely or probably result in injury."
This principle was applied in Hommel v. Jackson-Atlantic, Inc.,438 F.2d 307 (5th Cir. 1971). The facts of that case disclose that:
 "The accident occurred on a two-lane highway near its intersection with Hance Mill Road in the small town of Snowdoun, Alabama. Mr. Hommel, the driver of the car, with Mrs. Hommel, a front-seat passenger, was traveling in the north-bound lane of the highway. Just prior to the accident defendant's ice truck was following a large log truck in the south-bound lane. After plaintiffs passed through the intersection, defendant's truck turned left behind the log truck, out of the south-bound lane and across plaintiffs' lane of traffic, resulting in the collision." 438 F.2d at 308.
To the plaintiff's contention on appeal that the trial court erred in granting defendant's motion for a directed verdict on the issue of wantonness, the Court of Appeals responded:
 "Plaintiffs maintain that since defendant's truckdriver could not have possibly seen over, under or through the log truck immediately in front of him, it was wanton conduct for him to turn left before the log truck had completely turned at the intersection or otherwise moved on to leave defendant's driver with a completely unobstructed view of all possible oncoming traffic. We disagree. There is no evidence that defendant's driver saw the Hommel car before he turned. Indeed, the evidence indicates that the driver switched on his left turn signals before he turned and that he saw several oncoming cars approaching and waited for them to pass. After they passed, he looked, saw nothing coming, and started to make his left turn. As he turned he looked to the right and still saw nothing coming. When he finally saw the Hommel car bearing down on him, it was too late to avoid the collision. Viewing the evidence under the Boeing test [Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969)], we find no substantial evidence which would create a jury issue under the Alabama definition of wantonness." (Emphasis added.) 438 F.2d at 309.
Although that conclusion was not based upon the application of the scintilla rule, which is applicable in Alabama state courts, nevertheless the conclusion reached in that case, in regard to the requirements of wanton conduct, is equally applicable here. Burge here did not see plaintiff's car before the collision, and did not know or even suspect that his vehicle would collide with hers. To the contrary, Burge "waited *Page 1327 
and waited," looking to the right and to the left, observing while other cars behind him passed him into and across the intersection. He proceeded into the intersection, and plaintiff's vehicle also entered the intersection at the same time, when it was too late to avoid the collision.
In Griffin Lumber Co. v. Harper, 247 Ala. 616, 618,25 So.2d 505, 506 (1946), this Court explained:
 "Before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced injury."
Under the facts and circumstances here, we conclude that the trial court did not err in refusing to submit the issue of Burge's wanton conduct to the jury.
To the plaintiff's further argument that the verdict is contrary to the preponderance of the evidence, we conclude that it cannot be set aside for that reason. While there was evidence from which the jury might have concluded that plaintiff should prevail, there was also evidence supporting the jury's finding for the defendant. McGehee v. Frost,268 Ala. 23, 104 So.2d 905 (1958).
Finally, plaintiff contends that the trial court erred in allowing certain testimony from Cora R. Burge, the wife of the defendant, concerning a photograph taken by her and later admitted into evidence. She testified as follows:
 "Q. Did you have an occasion sometime after that accident to go there and to take some pictures?
"A. I did, at my husband's request.
 "Q. All right. Let me show you what has been marked for identification as Defendant's Exhibit number 12 and ask you if you can identify that, please.
 "A. Yes, sir. I'm sitting in my car placed as near in the same position that he fixed his Chevrolet sitting that morning.
 "Q. All right. Did he point out to you where to sit?
 "A. Yes. He was with me. And he got outside and he said, 'This is where I was sitting.'
 "Q. All right. Just a minute. Were you there at the intersection of Cherry and Warrior River Road?
"A. I was.
 "Q. And did you approach on Cherry at the intersection there where it intersects with Warrior River Road?
"A. I did.
"Q. All right. Go ahead.
 "A. I was sitting under the steering wheel and I wanted a view as near as possible to what he had that morning. And I made this picture.
 "MR. TERRY: Your Honor, I object to what he had and what he instructed her to do. She is relating an improper form of evidence by way of hearsay by what she is describing and the truth of what the pictures actually represent. . . . What she is offering is based on hearsay. The basis of it is hearsay testimony."
Contrary to plaintiff's contention, Mrs. Burge's testimony was not hearsay. The position she took, indeed, was the one he told her he had taken. Thus, her testimony was only an explanation of her reason for taking that position in order to take the photograph, not testimony that what he told her was true. Thus, her description was admissible over the hearsay objection; C. Gamble, McElroy's Alabama Evidence, § 273.01 (3d ed. 1977); Cleary, McCormick on Evidence, § 246 (2d ed. 1972).
Let the judgment be affirmed.
AFFIRMED.
MADDOX, ALMON, ADAMS and HOUSTON, JJ., concur.
[1] Specially, plaintiff cites us to Code of 1975, §§32-5-34(a)(1) and 32-5-112(b). It suffices to state here that the trial court instructed the jury on each of these statutes, along with the following additional instructions:
 "I will now charge you on the Alabama rules of the road. The Alabama rules of the road consist of a number of statutes enacted into law by your legislature regulating the flow of traffic upon the highways of this state. The violation of certain of these rules of the road by a person using the public highways is prima facie negligence only. This means that the violation of such a rule is presumed to be negligence, but such violation is not, under all circumstances, negligence. And it is a jury question whether such a violation in a particular case is negligence.
 "Should you determine that the violation of such a statute is negligence, such negligence, in order to be actionable on the part of the plaintiff or a defense on the part of the defendant, must proximately cause or proximately contribute to the injuries complained of by the plaintiff.
 "I will now read certain of these statutes to you. The fact that I read these statutes to you is no indication that any of these statutes have been violated or that such a violation is negligence or that any such violation proximately caused or proximately contributed to the injury complained of by the plaintiff. It is for you to decide whether or not the statutes are applicable and then whether or not they have been violated, and whether or not such a violation is negligence, and whether or not any such violation proximately caused or proximately contributed to the injury complained of by the plaintiff, depending on what you find the facts to be." *Page 1328