(87 South. 837)

**MILES v. HINES, Director General of Railroads. (6 Div. 66.)**

(Supreme Court· of Alabama. Dec. 2, 1920.)

1. **Railroads** ⬉345(3)—**Count alleging simple negligence warranted recovery for negligence after discovery of danger.**

In action for injuries in collision between train and automobile at crossing, count alleging simple negligence *held* to warrant a recovery for subsequent negligence.

2. **Appeal and Error** ⬉1041(2)—**Refusal to permit amendment harmless, where facts alleged were admissible under original complaint.**

In action for injuries at a crossing, where the complaint alleged simple negligence, refusal to allow amendment to complaint, so as to charge subsequent negligence, if error, was harmless, since the count charging simple negligence was sufficient to warrant recovery for subsequent negligence.

3. **Evidence** ⬉121(12)—**As to death of automobile driver in collision admissible in action for injuries to occupant.**

In action for injuries to occupant of automobile in collision with train at crossing, evidence as to the death of the automobile driver was admissible as part of the res gestæ.

4. **Railroads** ⬉316(3)—**Train entering curve must be under control.**

It is engineer's duty under Code 1907, § 5473, to bring his train under control when entering upon a curve crossed by a public road, where he cannot see at least a quarter of a mile ahead, regardless of whether there is an obstruction on the crossing.

5. **Railroads** ⬉346(4)—**Company has burden of showing compliance with statute.**

In action against railroad for injuries at a crossing, the railroad has the burden of showing compliance with Code 1907, § 5473, requiring engineer, on entering on curve to blow whistle and keep locomotive under control.

6. **Railroads** ⬉350(32)—**Proximate cause of collision with automobile held for jury.**

In action for injuries sustained in collision of automobile with train at a public crossing, the question of whether the engineer was guilty of negligence proximately causing the injury by failure to blow whistle and bring train under control on entering the curve, as required by Code 1907, § 5473, *held* for the jury.

7. **Railroads** ⬉350(34)—**Wantonness held for jury.**

In action for injuries to occupant of automobile, sustained in collision with train at public crossing, the question of wantonness on the part of the trainmen *held*, under the evidence, a question for the jury.

Appeal from Circuit Court, Marion County; T. L. Sowell, Judge.

Action by John S. Miles, against W. D. Hines, as Director General of Railroads. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

E. B. & K. V. Fite, of Hamilton, for appellant.

The engineer was guilty of negligence in failing to comply with the statutory requirements. Section 5473, Code 1907, and cases there cited. The burden was on a defendant to show a compliance. Section 5476, Code 1907, and cases there cited. As to the duty of those operating trains over a populous crossing, see 16 Ala. App. 323, 77 South. 917; 203 Ala. 284, 82 South. 534; 202 Ala. 671, 81 South. 627; 17 Ala. App. 96, 82 South. 36; 203 Ala. 86, 82 South. 100. It was a question for the jury whether the signals were given. 17 Ala. App. 96, 82 South. 36. The court erred in taking these questions from the jury. 166 Ala. 482, 52 South. 86; 194 Ala. 175, 69 South. 601; 203 Ala. 296, 82 South. 546. The amendment was properly allowed. Section 5367, Code 1907; 192 Ala. 629, 69 South. 57; 189 Ala. 686, 66 South. 643.

J. H. Bankhead, Jr., of Jasper, .for appellee.

The doctrine of res ipsa loquitur does not· apply to. injuries at crossings. 166 Ala. 585, 51 South. 959. Subsequent negligence could be shown under the simple negligence count, and any error in refusing to allow the amendment was without injury. 197 Ala. 71, 72 South. 366. As to the wanton counts, section 5476 of the Code has no application. 196 Ala. 77, 71 South. 455; 166 Ala. 591, 52 South. 341. To constitute wantonness at a crossing, there must be a concurrence of a dangerous rate of speed and a failure to give approaching signals. 90 Ala. 29, 8 South. 248; 92 Ala. 271, 9 South. 230; 117 Ala. 383, 23 South. 231; 95 Ala. 137, 10 South. 141; 125 Ala. 199, 27 South. 1006; 142 Ala. 677, 38 South. 857; 166 Ala. 589, 51 South. 959.

BROWN, J. This is an action on the case by appellant against the appellee to recover damages for personal injuries resulting from a collision between the defendant's passenger train and an automobile, in which plaintiff was traveling as a passenger of one Vickery, who was driving the car. The complaint consists of two counts—the first charging wantonness on the part of the trainman, and the second simple negligence. The only plea interposed to these counts was the general issue.

[1, 2] The second count was sufficient to

warrant a recovery for subsequent negligence, or negligence after the discovery of peril (Cent. of Ga. R. R. Co. v. Foshee, 125 Ala. 199, 27 South. 1006; Brown & Flowers v. Cent. of Ga. R. R. Co., 197 Ala. 71, 72 South. 366), and if error was committed by the trial court in refusing to allow the amendment to the complaint by adding the third count charging subsequent negligence, it was error without injury.

[3] It was permissible for the plaintiff to show as of the res gestæ of the occurrence under investigation that Willis Miles was killed in the same collision. Bessiere v. Ala. City, G. & A. R. R. Co., 179 Ala. 317, 60 South. 82. Therefore the court erred in sustaining defendant's objection to the question asked the witness Vickery eliciting testimony of this fact.

The evidence shows that Vickery's automobile, which he was driving along the public pike carrying the plaintiff and Willis Miles as passengers, came in collision with the defendant's passenger train at the crossing of the pike and the railroad; that the train approached the crossing around a curve, and through a cut—the crossing being located at or near the mouth of the cut, the embankment of which began at the road crossing and gradually increased to a height of from 12 to 15 feet. There was also evidence tending to show that several piles of cross-ties were stacked along the embankment on the south side of the railroad—the side from which the automobile approached the crossing—and there was evidence tending to show that the trainman could not see the crossing until the train was within from 50 to 200 yards of the crossing. One witness testified that a person standing within from 25 to 30 feet of the track could not see the top of the train through the cut until it was within from 50 to 100 yards of the crossing.

The evidence shows that the whistle was blown for the crossing at the "whistling post"; the whistling post being located, according to some of the witnesses at about a quarter of a mile from the crossing, and at least one witness testified that it was about a mile from the crossing. One witness testified he heard the bell ring, but whether the whistle was blown or the bell rung at short intervals as the train approached the crossing is not shown.

The evidence is also in conflict as to the speed of the train as it approached the crossing—some of the witnesses testifying it was running at the rate of 30 miles per hour, while others fix the speed as high as 55 miles per hour. The evidence is likewise conflicting as to the speed of the automobile; some of the evidence tending to show it was running from 5 to 6 miles per hour, while other evidence tends to show that the automobile was being run at a rate of from 8 to 10 miles per hour.

The evidence is also conflicting as to whether the train ran into the automobile or the automobile into the train. One witness testified that the front part of the automobile passed over the first rail just as the collision occurred; while a number of other witnesses testified that the automobile struck the driving or side rods of the locomotive from 6 to 8 feet from the front end of the locomotive. The evidence further shows that the locomotive did not cease to work steam until half the train had passed over the crossing, and that it passed beyond the crossing a distance of 370 yards or 1110 feet before it came to a stop.

[4] It was the statutory duty of the engineer in charge of the engine under the circumstances, which some of the evidence tends to show were here present, to blow the whistle or ring the bell at least one-fourth of a mile before reaching the crossing, and to continue to blow the whistle or ring the bell at short intervals until the locomotive had passed the crossing, and also to approach and pass the crossing at such speed as to prevent accident. Code 1907, § 5473. The provisions of the statute here pertinent are:

"The engineer, or other person having control of the running of a locomotive on any railroad, must blow the whistle or ring the bell at least one-fourth of a mile before reaching any public road crossing, * * * *and continue to blow the whistle or ring the bell,· at short intervals, until it passes such crossing.* * * * He must also blow the whistle or ring the bell. * * * immediately before entering any curve crossed by a public road, where he cannot see at least one-fourth of a mile ahead, and *must approach and pass such crossing at such rate of speed as to prevent accident in the event of an obstruction at the crossing."*

This statute, as has often been declared, is a regulation affecting public safety, and its manifest purpose is to safeguard against injury to persons and their property in the lawful exercise of their right to cross over the railroad tracks along the public highways. The provisions of the statute here italicized are prospective in their scope, looking forward to conditions that are likely to develop between the time the locomotive enters upon a curve crossed by the public road where the engineer cannot see one-fourth of a mile ahead and the time the locomotive reaches the crossing. The duty of the engineer to bring his train under control so as to prevent accident at the crossing arises when the engine enters upon a curve crossed by a public road where he cannot see at least a quarter of a mile ahead —whether there is then an obstruction on the crossing or not. Ensley Ry. Co. v. Chewning, 93 Ala. 29, 9 South. 458; Nashville, C. & St. L. R. R. Co. v. Hembree, 85 Ala. 483, 5 South. 173; West. Rwy. v. Sistrunk, 85 Ala. 352, 5 South. 79.

There is no contention here that the statute is not applicable to the case as presented by the evidence; but the contention of appellee is, that the duty to bring the train under control in approaching the crossing does not arise until there is an obstruction on the track. The facts in this case serve to illustrate that the statute cannot be given this construction as this would amount to an emasculation of some of its important provisions and destroy to a large degree its wholesome and beneficent purposes.

[5] While the evidence shows that defendant's servants discharged some of the duties imposed by the statute, it does not show that they discharged all of them, and on the case as presented under the second count of the complaint the burden of proof was on the defendant to show a compliance with the requirements of the statute. Code, § 5476. It results, therefore, that the court erred in giving the affirmative charge for the defendant on the case as presented under this count.

[6] This is true, though it be conceded that the locomotive reached the crossing immediately ahead of the automobile, and that the automobile ran against the locomotive. Non constat, if the engineer had observed the statutory duty and brought his train under control when his engine entered upon the curve, the automobile would have had ample time to reach and pass the crossing ahead of the train, and what was said in L. & N. R. R. Co. v. Calvert, 172 Ala. 602, 55 South. 814, is here pertinent:

"The slightest delay or slackening in the speed of the train might have enabled the buggy to clear the track."

Hence it was for the jury to say whether the negligence of the trainman or the driver of the automobile was the proximate cause of the injury. The same is true as to the duty of the engineman to "continue to blow the whistle or ring the bell," until the engine approached and passed the crossing. If this statutory duty had been observed, such warning of the train's approach might have reached the ears of the driver of the automobile and caused him to stop, thus carrying into effect the purpose of the statute. Under such circumstances the question of proximate cause was for the jury.

"The logical rule in this connection, the rule of common sense and human experience as well (if, indeed, there can be a difference between a logical doctrine and one of common sense and experience, as some authorities appear to hold), is that a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind." Armstrong, Adm'x, v. Montgomery St. Rwy. Co., 123 Ala. 233, 26 South. 349.

As the case must be tried again, we deem it proper to treat the case as presented under the wanton count. The evidence shows that the crossing in question was formed by the crossing of the railroad over the pike leading from Fayette to Winfield, and was located near the village of Winfield. The evidence further shows that where the pike is now located a public road had existed for a great many years—the public road being located at this point before the railroad was constructed. The evidence also shows that for some time before and up to the occurrence of the accident in question one Mitchum had maintained a logging camp near the crossing, at which camp several persons were employed in skidding and loading logs. It is also shown that the crossing was much frequented and used by the general public, who passed over in large numbers and at all hours during the day; that the trainman in charge of the defendant's engine on this occasion had been operating trains over this crossing every few days for from 15 to 20 years; and that the train on the occasion of the accident approached the crossing around a curve and through a cut which obstructed the view of the trainman until the locomotive was within from 50 to 200 yards of the crossing. Phases of the evidence tended to show that the train was running at a high rate of speed, as heretofore shown, and approached the crossing without the speed being slackened as it passed over the curve and through the cut, and that the only signals of its approach were as heretofore stated.

[7] Under these phases of the evidence the case was for the jury under the wanton count. Birmingham South. Ry. Co. v. Harrison, 203 Ala. 284, 82 South. 534, and authorities there cited; Haley v. K. C. M. & B. R. R. Co., 113 Ala. 640, 21 South. 357; A. G. S. R. R. Co. v. Guest, 144 Ala. 373, 39 South. 654; L. & N. R. R. Co. v. Morse, 202 Ala. 671, 81 South. 627.

Let the judgment of the circuit court be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE, GARDNER, and THOMAS, JJ., concur in opinion.

McCLELLAN and SAYRE, JJ., concur in conclusion.

SAYRE, J. I concur in the reversal, but think it proper to state my opinion that if the automobile in which plaintiff was riding ran into defendant's engine, as the great weight of the evidence went to show, instead of the engine running into the automobile as testified in a way by one witness who saw

the accident from a point three-quarters of a mile away, then plaintiff was not entitled to recover on either count, unless the engineer actually saw that the automobile would approach the crossing in such manner as to be unable to stop in the event the locomotive got there first, and, with such knowledge, failed to exert himself properly to prevent the catastrophe. In the last hypothesis defendant would be liable as for subsequent negligence only. I do not understand there was in the evidence any substantial support for such a finding; but, whether so or not, if the facts were as shown by the great weight of the evidence, the default of defendant's engineer in complying with the statute—or his common-law duty to the same effect—was not the proximate cause of plaintiff's injury. It is a commonly recognized principle of law—

"that if a new force or power intervenes, sufficient of itself to stand as the cause of the misfortune, the other must be considered as too remote." Thompson v. L. & N. R. R. Co., 91 Ala. 496, 8 South. 406, 11 L. R. A. 146; 29 Cyc. 499, 500.

On that hypothesis of the facts which I am now considering and which I think should be taken into account on another trial, the alleged negligence of defendant's engineer had spent its force—the train head had reached and passed the crossing without meeting an obstruction—when the indisputable negligence of the driver of the automobile, independently of what the engineer had done or omitted to do and efficiently in itself, intervened to produce plaintiff's hurt. In making this statement I assume that the engineer was not aware of the pending collision—a phase of the case to which I have already alluded—and that plaintiff was not responsible for the driver's negligence. No issue was made as to contributory negligence, for the reason, I suppose, that plaintiff was a mere passenger in the automobile and not responsible for the driver's negligence. I think the aspect of the case to which I have referred should be stated, to the end that it be considered on another trial.