145 So. 431

### WESTERN RY. OF ALABAMA v. DE BARDELEBEN.

#### 2 Div. 8.

Supreme Court of Alabama.

Nov. 25, 1932.

Rehearing Denied Jan. 27, 1933.

Reese & Reese and Mallory & Mallory, all of Selma, for appellant.

S. F. Hobbs, of Selma, for appellee.

BROWN, J.

This is an action on the case, under section 5696 of the Code of 1923—the Homicide Act—by the appellee as the administratrix of Fred A. De Bardeleben, deceased, against appellant for wrongfully causing his death.

The complaint, consisting of a single count, ascribes said death to the negligence of the defendant's servants or agents while acting within the scope of their employment in the operation of one of its trains over Mulberry street crossing in Selma, Ala.

The general issue, not guilty, was pleaded in short, by consent, with leave to give in evidence any matters of defense, as if specially pleaded, and with like leave as to any matters in avoidance of such special defenses.

The evidence shows that said intestate was run against at said street crossing by one of defendant's locomotives in charge of its engineer, R. W. Murdock, and his fireman, George Meek, resulting in his injury and death.

The evidence is without dispute that said intestate, with knowledge that defendant's train was approaching the crossing and its close proximity thereto, stepped, jumped, or ran upon the track in front of the approaching locomotive, immediately before it reached the crossing, and, as a matter of law, was guilty of negligence which proximately contributed to his injury and death. This negligence on his part was a complete bar to the plaintiff's right of recovery for any antecedent negligence on the part of the trainmen in failing to keep a lookout and give the statutory signals, or in failing to bring the train under control before it reached the crossing, if in fact they were guilty of such negligence, which, under some of the tendencies of the evidence, was a question of fact for the jury. Peters v. Southern Railway Co., 135 Ala. 533, 33 So. 332; Central of Georgia Railway Co. v. Blackmon, 169 Ala. 304, 53 So. 805; Helms v. Central of Georgia Railway Co., 188 Ala. 393, 66 So. 470; Alabama Great Southern R. Co. v. Smith, 196 Ala. 77, 71 So. 455.

There is at most a scintilla of evidence going to show subsequent negligence on the part of the engineer. He testified: "I was keeping a lookout in front of my engine as I came across that bridge and from then on till I reached the crossing, and Mr. De Bardeleben was struck. I saw Mr. De Bardeleben before he was struck. I first saw him on the Southern Railroad Gravel Road track as I call it, about sixty feet east of the Western Railway. Mr. De Bardeleben was traveling west along that road. I was about seventy yards or 210 feet from him then. He was

about sixty feet from the track. He was walking and apparently started to break into a trot. He looked at the crossing, and started to run and settled back down, and walked up to, I would say about eight feet from the crossing and started to run again and looked up at the train and back at the crossing. He stopped for a moment and looked and then he started running again. * * * I believe it is thirty two feet from the pilot of that engine to the first edge of the crossing. I think that is where he went out of my vision under the running board. My bell was ringing all the time. He looked at the engine again, stopped and then he started to run up to the crossing, and the train hit him. He looked up and back at the crossing and then he went out of my view. * * * I recognize that picture [Exhibit A] as the picture of Mulberry crossing, and that engine I had was headed the same way as that engine in the picture. That engine is stopped at about the point where it was when Mr. De Bardeleben was within eight feet of the crossing. I was running between ten and twelve miles per hour. I am safe in saying twelve miles per hour at the outside. There was not any way in which, by the time that the train had reached that crossing, you could have slackened its speed. You could not have, for that close it was beyond human power to have done any good. You could get your brakes set, but could not reduce speed enough to do any good. ∴ * * I didn't have on brakes as I went down grade. I didn't put on my brakes until after the engine had struck Mr. De Bardeleben. After he ran in front I had no occasion to. I asked the fireman right then whether or not he had gotten across. * * * I said 'George did the old gentleman get out over there?' He said that I had knocked him down the grade. I didn't know I had struck him until George said so. I asked George about the same time I put on my brakes."

Meek, the fireman who had been in the service of defendant for twelve years, as such, testified: "The train had its brakes applied for the first time after the engineer asked his question. It takes a few minutes to stop after the brakes are put on. * * · * There was no emergency application of the brakes. Unless the valve is turned all the way around they go more slowly, but if the emergency brakes had been applied, it would not have stopped at once, but it materially slackens the speed of the train immediately. It would throw any one forward who is sitting on the train. It is a very violent slackening of the speed of the train. With that train going down grade it would possibly have stopped the train in a hundred feet. I think I could have stopped it in that space. The emergency brakes are put on with the same valve as the ordinary brakes. It would take several seconds for the engineer to put the emergency brakes on so as to

take effect. It would not stop immediately. The emergency brakes would immediately slacken the speed of the train just like 1–2–3. Emergency brakes are applied by turning the valve further. * * * [On re-direct examination] To put on brakes all an engineer has to do is to reach out and catch hold of it. I mean that if a man is on that crossing about 35 feet from him, nothing could be done that I see that would stop the train. * * * [On re-cross examination] By applying the emergency brakes you could slacken the speed of the train materially within thirty feet. * * * [Re-direct examination] Thirty-five feet is a mighty little space even when traveling at 10 miles per hour. The train would have gone 12–14 or even 20 feet before the brakes could be applied. All the time it would take would be to raise your hand."

In the light of this evidence, if De Bardeleben had proceeded immediately across the track, without stopping after he got within the sweep of the on-coming train, if its speed had been checked at all, it is probable that he might have cleared the track and averted the catastrophe. Louisville & N. R. Co. v. Calvert, as Adm'r, 172 Ala. 597, 55 So. 812; Miles v. Hines, Director General, 205 Ala. 83, 87 So. 837.

The evidence shows, without dispute, that De Bardeleben did not proceed across the tracks, but stopped after he got on the track on which the train was approaching, and then attempted to jump clear of the on-coming train, and in this effort failed.

Plaintiff's witness Johnson testified: "I saw him as he left, as he walked towards the railroad, and I seen [saw] him until he got to the Southern Railroad and crossed, and after that he made a little stop and then he started again and I couldn't see him any more. He stopped a few steps after he passed the Southern Railroad tracks—10 or 12 steps —after he crossed the Southern tracks and going towards the Western tracks. * * * I saw Mr. De Bardeleben stop. He was then within ten or twelve feet of the track where it crosses Mulberry Street there. I saw the train at the same time. I couldn't say how close the train was to Mulberry crossing when I saw Mr. De Bardeleben stop, but it wasn't very far. It was as close to the crossing as Mr. De Bardeleben was. Mr. De Bardeleben and the train were about the same distance from the crossing."

The plaintiff's witness, Daniels, testified: "I saw him when he was coming from over at Grant Hampton's house and he was coming from there to the railroad. He stopped and looked both ways and when he looked one way and saw the train right on him, he made a jump to get off the tracks and the train hit him, and he was in the middle of the track when he knew the train was on him. He was over by the first railroad track when

he looked both ways. And he got a little way to' the track and he looked one way, and looked to the river and the train, and it was right on him, and he jumped, and the train knocked him off. * * * [On cross-examination] He stopped and looked both ways and I saw him. I could see the train coming then. He was pretty close to the Mulberry Street crossing. The train was on the bridge when he looked both ways. * * Then he stopped again and looked up at the train, and then he jumped and the train hit him. When he stopped between the two tracks and listened and looked, the train was just coming off the bridge. It is about as far from the Western track to the spur track of the Southern Railroad, as it is from me to you. That is, about five steps or fifteen feet. The train was up at the bridge and coming on down there when he got in the middle of the track he stopped and looked again. Then he made a jump and the train hit him and knocked him off."

■ This evidence clearly shows that plaintiff's said intestate was guilty of subsequent contributory negligence, after he went upon the track immediately in front of the locomotive, in stopping to look, and that this negligence proximately contributed to his injury and death, and operates to bar the plaintiff's right of recovery on account of the subsequent negligence of the engineer, if it be conceded the engineer was guilty of such negligence, intestate's negligence continued to the moment of the catastrophe. Birmingham Railway, Light & Power Co. v. Ætna Accident & Liability Co., 184 Ala. 601, 64 So. 44; Louisville & N. R. Co. v. Scott, 222 Ala. 323, 132 So. 29.

The court, therefore, erred in refusing the affirmative charge requested by the defendant, and for this error the judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.