151 So. 56

### DeBARDELEBEN v. WESTERN RY. OF ALABAMA.

#### 2 Div. 26.

Supreme Court of Alabama.
Nov. 23, 1933.

S. F. Hobbs, of Selma, for appellant.

Steiner, Crum & Weil, of Montgomery, and Reese & Reese, and Mallory & Mallory, all of Selma, for appellee.

554

BOULDIN, Justice.

The action is under the homicide statute. Code, § 5696.

On former appeal (Western Ry. of Alabama v. De Bardeleben, 226 Ala. 101, 145 So. 431), we considered the case presented upon a count in simple negligence, with pleas of general issue and contributory negligence.

The evidence was reviewed quite fully.

█ We need merely state that on the last trial as well as the former, it was without dispute that the deceased, of mature years, in full possession of his senses of sight and hearing, in full daylight, with unobstructed view of an approaching train, with no distracting sounds shown, entered upon a street crossing in front of a locomotive drawing a train of eighteen cars, with bell ringing, and was struck and killed.

Without debate, the contributory negligence of the deceased barred any recovery because of initial negligence of the trainmen, if any.

The former decision deals chiefly with negligence after discovery of peril. Under the evidence there considered, it was without dispute that deceased saw the approaching train, came to a stop near the track, then walked or ran on the track, but again stopped on the track, looked at the on-coming engine, and was struck either while still standing or as he jumped to clear the track.

We held that in view of this undisputed evidence, the deceased was guilty of negligence after the discovery of his own peril, which concurred with and defeated any recovery for negligence of the trainmen after discovery of peril, if such there was.

On the second trial, now for review, plaintiff amended the complaint by adding counts charging wanton injury. The trial court gave the affirmative charge for defendant. This ruling is now presented for review.

On the second trial plaintiff introduced a witness, Gus Vaughan, not examined on the first, who testified as follows:

"I saw Fred A. DeBardeleben as he approached the crossing. I was traveling at about a 45 degree angle to the Western Track. The first time I noticed him he was about 25 yards from the track. He was making toward the crossing. I thought if he got across it would be a miracle. I didn't see the engine hit him. When he was about the middle of the track the engine was between me and him. He was lying some twenty feet from the track when I got there, but I didn't stop; I was in a hurry. I didn't know who it was until later. Yes, I saw Fred A. DeBardeleben from the time he was 25 yards from the track till he was about the middle of the track. He was walking when I saw him, making good time. I didn't notice him slow down or increase his speed. I didn't pay any attention if he did; I don't think he did. The train never did slacken its speed till after it hit him. It is a pretty steep grade down from the river bridge to that crossing."

And on cross-examination:

"When I saw him he was walking in about an ordinary gait; he didn't appear to be in a hurry. He didn't increase his speed. I saw him walk on the track. I saw the train. He and the train were right together. The engine was close to him when he walked on the track. I don't know how close. It wasn't ten feet. I don't know how close it was. It wasn't 15 feet. * * * My best recollection and judgment is that Mr. DeBardeleben was about 15 or 20 feet from the engine when he stepped up on the track, like he was walking. The engine obstructed my view of the place where the engine struck him."

It is insisted this evidence made a case for the jury on the wanton counts.

Stress is laid on the remark of the witness: "I thought if he got across it would be a miracle."

The argument appears to be that if the movements of deceased created such apprehension to an observer, the engineer, who had also seen him approaching the track, should

have seen the peril and resorted to preventive measures.

A man walking toward a railway crossing is not in peril from a passing train unless and until he enters the wake of the train. An engineer may assume he is in the exercise of his senses and will perform the obvious duty to look and listen, and not attempt to cross, if the train is dangerously near. Indeed, under conditions shown here the engineer may naturally assume the footman does know. How could he fail to know?

Vaughan's evidence discloses no facts indicating the deceased was going to disregard his own safety. The witness does not disclose at what moment he thought it would be a miracle, if deceased got across. The reasonable inference is this thought arose when he saw deceased did not stop clear of the track, and passed out of sight so near the approaching engine that his escape would be a miracle. If, on the contrary, he meant to say that impression came to him as deceased was approaching the track some yards away, his own evidence renders such thought a mere supposition or conjecture.

Evidence of this sort has no probative force, cannot be made the basis of a verdict any more than can mere conjecture on the part of the jury itself. Continental Casualty Co. v. Paul, 209 Ala. 166, 95 So. 814, 815, 30 A. L. R. 802.

Probably this witness' evidence does tend to contradict all the other evidence touching the stopping of deceased as heretofore noted. This, notwithstanding the witness says deceased passed out of his sight, etc. But, if deceased did not stop on the track, it follows, as of course, that he entered the crossing so near the approaching train that he could not get across. This is the real effect of Vaughan's testimony. This, under the undisputed evidence was too late to even check the speed of the train and prevent the accident.

No case of wantonness is made, nor insisted upon, because of running at high and dangerous speed over a populous crossing, without signals of approach, etc., as in Alabama Great Southern R. Co. v. Grauer, 212 Ala. 197, 102 So. 125, and St. Louis & S. F. Ry. Co. v. Dennis, 212 Ala. 590, 103 So. 894, cited by appellant. The evidence was that this train was moving twelve miles per hour. One witness' testimony probably indicates some greater speed, but how much is not stated.

The affirmative charge was properly given as to all counts.

Lest we be misunderstood, we observe that in a case like this, evidence which would sustain a count for wantonness, would also sustain a count for negligence after discovery of peril. Negligence covers any want of due care after discovery of the peril, which prox-imately causes the injury; while wanton conduct requires a conscious disregard of duty in the presence of the known danger, etc. So, evidence which will not warrant a reasonable inference of causal negligence, cannot warrant an inference of wanton injury.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.