## ATLANTIC COAST LINE R. CO. v. KING.

### No. 13786.

United States Court of Appeals
Fifth Circuit.

May 10, 1952.

Rehearing Denied July 24, 1952.

John S. Foster, Birmingham, Ala., for appellant.

John D. Higgins, Birmingham, Ala., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

The suit was for damages for injuries, resulting in death, sustained in a crossing collision between a train, belonging to and operated by defendant, and an automobile, owned and driven by plaintiff's intestate.

Defendant having made answer, a pretrial hearing was had, the claims and defenses were agreed[1] upon, and the cause was set for trial and was tried to a jury.

At the conclusion of all the evidence, plaintiff amended her complaint by striking defendant O'Neal from it, the defendant Atlantic Coast Line moved for a directed verdict, on each of the 20 grounds set out in the motion, and ruling thereon was reserved.

At the same time the defendant requested, and the court refused to give, special charges: (1) instructing the jury on the

---

1. Plaintiff's claims were that: decedent's death proximately resulted either from the original simple negligence, the wanton conduct, or the subsequent negligence of defendant's agents or servants.

The defenses were: (1) a denial of negligence, either original or subsequent, and denial of wanton conduct; (2) to original simple negligence, the contributory negligence of defendant's intestate; (3) to subsequent negligence, the subsequent contributory negligence of defendant's intestate.

duty of one approaching a track to stop, to look, and to listen for approaching trains; and (2) that if plaintiff's decedent was guilty of negligence in respect of this duty, and such negligence was the sole proximate cause of the collision, they could not find for the plaintiff. This charge on sole proximate cause was presumably refused because of the claim of wantonness on the part of defendant. Thereafter, on an instruction to find plaintiff guilty of contributory negligence, the cause was submitted to the jury, on the issues of wantonness and subsequent negligence or discovered peril, and a verdict for $12,000 was returned.

Defendant's motion for judgment *non obstante* and, in the alternative, for a new trial both denied, defendant appealed from the judgment entered on the verdict on specifications of errors, in number fourteen, in substance three or four.

The parties having argued the appeal on briefs and oral argument, the matters presented thereby are before us for decision.

Here, driving home its primary contention that the evidence demanded a verdict and judgment for the defendant, appellant, marshaling the evidence and the authorities, insists that under the settled law of Alabama, plaintiff did not establish negligence, and if it did, the defenses to it were made out as 'matter of law, and the judgment for plaintiff must be reversed and here rendered.

The appellee, with equal confidence in the appraisal of the evidence and the cases, urges affirmance.

In the alternative only, appellant urges upon us that if the judgment is not to be rendered, it must be reversed for trial anew because of the errors of the court in refusing defendant's requested charges Nos. 9, 10, and 12, as to the duty of plaintiff's intestate in approaching the crossing and charges "X" and "Y" as to his negligence being the sole proximate cause of the collision.

We are of the clear opinion that under the law of Alabama, particularly as that law is laid down by the Supreme Court of Alabama in Atlantic Coast Line v. Barga-nier, Ala.Sup., —— So.2d ——, the court erred in refusing to give the affirmative charge on both counts of the complaint. Because we are, we will not undertake to discuss or appraise the court's failure to give defendant's requested charges on the issues of contributory negligence, or the negligence of plaintiff's decedent as the sole proximate cause, other than to say of the latter that appellee's reliance on the rule of Lindsey v. Kindt, 221 Ala. 190, 128 So. 139, will not do. This is for the reason that, though wantonness was pleaded, the evidence does not support the plea, and the issue was not in the case.

■ Returning to the dominant issue, whether and why the affirmative charge was demanded on all the issues in the case, and giving to the evidence the most favorable construction in favor of plaintiff of which it is susceptible, we find ourselves, in agreement with the instruction the district judge gave, that plaintiff's intestate was guilty of negligence as a matter of law, and also in agreement with appellant that this negligence was the sole cause of the injury.

■ Further, we find no basis whatever in the evidence for the submission of the tendered issue of wantonness, nor any evidence supporting plaintiff's claim that defendant was guilty of either original or subsequent negligence.

Conceding, as we must, that a study of the many cases, decided in Alabama over the years, which deal with the questions involved here, under differing but closely related facts, discloses some which, if not in their holdings, at least in their *dicta,* tend to support appellee's view to the contrary, we yet are in no doubt that the law in Alabama as to subsequent negligence and wantonness, is, as stated in appellant's brief in the following propositions:

"IV. When a person injured at a railroad crossing seeks to recover of the railroad for subsequent negligence, knowledge of such person's peril cannot be imputed to the defendant railroad, and a responsible agent of the defend-

ant must have actual knowledge thereof." [2]

"V. There can be no recovery for subsequent negligence of an engineer when the engineer did everything in his power to avoid the collision after seeing that the danger was imminent." [3]

"VIII. In order for an act, or mission, to constitute wantonness, the act done or omitted must be done or omitted with the knowledge and present consciousness that injury will probably result." [4]

We, therefore, reject the argument on page 18 of appellee's brief that "the jury was fully authorized to find that appellant's engineer was guilty of subsequent negligence *in not, first, applying the brakes as soon as he saw the automobile; * * *.* It was sufficient, in order to show subsequent negligence, that the jury be reasonably satisfied from the evidence that the engineer could, by the use of every available means known to skilful engineers, have retarded the movement of the train for enough time or sufficiently for the decedent to have escaped his condition of peril." (Emphasis supplied.)

We reject this argument because it substitutes the engineer's *seeing* the automobile for the prime essential of the application of the doctrine that the *engineer know, that is, see and realize that the driver of the automobile is in a position of peril.* If appellee's view that an engineer must apply the brakes *as soon as he sees an automobile approaching a crossing,* should prevail in law, trains could not run on schedule, or over crossings at more than a *snail's* pace. This is not the law. Indeed, the law is quite to the contrary. The system of "Stop, Look, and Listen" signs placed on highways at or near railroad crossings are designed for the humane purpose of protecting lives, while avoiding this very necessity, and the railroad company and its agents are entitled to assume, until they see and know the contrary, that drivers of automobiles will see and obey the signs. It is only when an engineer sees and knows that the driver of the automobile does not intend to, or cannot, stop within a safe distance, that questions of subsequent negligence arise. There is no evidence in this case from which the jury could have found that the engineer saw or realized that plaintiff's intestate was, within the legal meaning of the term, *in peril* in time to stop the train before striking him.

Fortunately for this court, in the discharge of its duty to apply the Alabama law to this case, the Supreme Court of Alabama has, by its opinion in the Barganier case, supra, furnished us a guide to the law of Alabama in crossing accidents of the general nature of this one. Indeed, that opinion deals with a crossing accident *at this very crossing,* an accident which occurred shortly prior to the accident sued on here, and which figured in this case to the extent of causing a motion for a mistrial.[5] In that opinion, the court reversed

2. Southern Ry. Co. v. Hale, 222 Ala. 489, 133 So. 8.

3. Southern Ry. Co. v. Miller, 226 Ala. 366, 147 So. 149; Atlantic Coast Line R. Co. v. Flowers, 241 Ala. 446, 3 So.2d 21; Helms v. Central of Georgia Ry. Co., 188 Ala. 393, 66 So. 470.

4. Peters v. Southern Ry. Co., 135 Ala. 533, 33 So. 332; Central of Georgia Ry. Co. v. Forshee, 125 Ala. 199, 27 So. 1006; Louisville & N. R. Co. v. Brown, 121 Ala. 221, 25 So. 609; Louisville & N. R. Co. v. Rush, 208 Ala. 516, 94 So. 577; Alabama Great Southern Ry. Co. v. Smith, 196 Ala. 77, 71 So. 455; Roberts v. Louisville & N. R. Co., 237 Ala. 267, 186 So. 457; Louisville & N. R. Co. v. Sunday, 248 Ala. 597, 28 So.2d 796;

Louisville & N. R. Co. v. Porter, 196 Ala. 17, 71 So. 334.

5. This motion was based upon references to the Barganier accident by counsel for plaintiff during the course of cross examination of Mr. O'Neal, the engineer of the train involved here.

Asked if he had been informed that this crossing was a very dangerous crossing, he replied: "I do not consider it a dangerous crossing, No, sir."

"Q. You remember when Mr. Barganier got his neck broke at that crossing?"

This question was objected to and a mistrial moved, and the court overruled the motion.

"Q. I will ask you if it was talked among you and other engineers and members of the crew with reference to the

the judgment, which had been entered for Barganier, declared as a matter of law that the crossing was not "a populous crossing" or of the character which would permit the submission of the issue of wantonness in the absence of evidence that the trainmen saw and knew the danger or peril. It further went on to say that "simple negligence, 'the inadvertent omission of duty,' is not an element of wantonness." There must be a conscious, a deliberate, failure to act after the peril is seen and apprehended.

Quoting from Nave v. Alabama Great Southern Railroad Co., 96 Ala. 264, 11 So. 391, 392, the court declared that "wantonness and intention to do wrong can never be imputed to them [railroad employees] unless they actually know (not merely ought to know) the perilous position of the person on the track, and with such knowledge fail to resort to every reasonable effort to avert disastrous consequences".

Then applying that principle to the facts of the case under discussion, the court went on to say:

"Here the testimony relied on by the plaintiff to convict the trainmen of wantonness falls far short of showing that the crossing in question 'was a populous crossing', nor does it show or tend to show that people were in the habit of crossing 'with great frequency' at that hour of the day or that the train was being operated without signals of its approach."

The evidence in this case as to the operation of train and automobile is no stronger for plaintiff than that in Barganier's case, if indeed it is as strong. If, as the Supreme Court held, there was no ground for recovery there, there is none here.

Without, therefore, undertaking to canvass and interpret the great number of Alabama cases cited, it is sufficient for us to

say that the application of the facts of this case to the principles laid down and applied in Barganier's case demands a like result here, and that, on the authority of that and other cases cited and relied on in it, the judgment is reversed and here rendered for appellant.

---

Barganier accident that happened at this same crossing shortly before this accident, and if you did not know it was a dangerous crossing and used very frequently by automobiles at this time of day?"

After a considerable legal objection the witness answered:

"There was not any discussion between me and the others as to the crossing accident. I knew they had had a crossing accident there, but all railroad crossings are dangerous and hazardous."

Further, during the argument of this case, counsel for the plaintiff made reference to Mr. Barganier's neck having been broken at this same crossing.