Eva L. TURNER, as Administratrix of the
Estate of Paul Turner, deceased,

v.

ATLANTIC COAST LINE RAILROAD
COMPANY.

No. 15226.

United States Court of Appeals
Fifth Circuit.

May 10, 1955.

Douglas Brown, Henry B. Steagall, II, Ozark, Ala., W. G. Hardwick, Dothan, Ala., for appellant.

Evans Hinson, Montgomery, Ala., Alto V. Lee, III, Dothan, Ala., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment on a directed verdict for the appellee railroad company in a suit brought by the widow for the wrongful death of her husband when the automobile in which he was driving stalled and was struck on a railway crossing in Ozark, Alabama.

The complaint was laid in four counts, numbers one and three of which alleged that the defendant negligently ran its train into the deceased's automobile, and numbers two and four of which alleged a willful and wanton running of defendant's train into the automobile. The defendant answered that it was free of any negligence, and, affirmatively, that the negligence of the deceased was the sole proximate cause of his death.

The trial was not a long one, and the principal facts were not in dispute. Of course, in considering the correctness of the trial judge's action, we must consider the competent evidence on behalf of the plaintiff as if it were undisputed. Witnesses for the plaintiff testified that the deceased, who was driving his automobile with a passenger named Faulk sitting in the right hand front seat, turned into Broad Street, which crossed the track, from Eufaula Street, between twenty-five and fifty feet from the railroad tracks; that he stopped before entering Broad Street; that he made his turn and drove slowly (at a speed estimated by Faulk to be fifteen and by a witness directly behind him to be five miles per hour) directly onto the first of the two sets of tracks; that when he got to the second or main line his car choked down and stalled; that neither he nor Faulk looked to the right, the direction from which the freight train of 119 cars and five diesel units was coming; that there was no obstruction to prevent them from seeing the train as they approached the track; that Faulk did not see the train until the car choked down, whereupon he saw it and said "we had better get off"; that the train was then six hundred yards away (he later changed this to six hundred feet, which other of plaintiff's testimony seems to bear out); that "we tried to get the thing started and couldn't, and I looked up again and I said 'I am a going,' and I went out the door"; that the train then hit the automobile and killed Turner, no one having seen him get out of the car, although testimony was given by some of the witnesses that he might have tried to get out; that a witness named Tyler was within a few yards of the accident, being in an automobile directly behind Turner; that he saw Faulk leave and saw the train hit the automobile but did not see Turner leave, although he could not clearly see the left hand side of the Turner car. Witnesses for the plaintiff, Faulk and Tyler, and Chambers, who was sitting in his car a block and a half from the track on the next street, estimated the speed of the train at a maximum of 50 miles per hour; these three witnesses testified they did not hear a whistle or bell, but none of them would testify that none was sounded.

The testimony of the defendant's witnesses that was undisputed was that the fireman saw the Turner automobile as it approached Broad Street and as it turned and entered the right of way; that both he and the engineer saw it on the tracks when they were three or four hundred feet from the crossing; that the engineer then looked to his right at another automobile that was approaching the crossing from that side on a road running parallel to the tracks; that the fireman then saw that the Turner automobile was stopped and im-

mediately called the engineer who "within the second" applied full emergency brakes; that the fireman saw Faulk leave the car and saw the driver working with the automobile mechanism and then apparently try to get out on the right side when the engine struck the car; that the train speedometer tape showed it was traveling at a speed of 40 miles an hour and that it stopped approximately 1100 feet beyond the crossing. The engineer did not put the locomotive in reverse, testifying that he used the most effective means to stop the train and that putting a diesel locomotive in reverse would not have effected any quicker stop. Both engineer and fireman testified that the whistle was blown a quarter mile from the crossing and subsequently, that the bell was ringing automatically and the electric headlight was burning, although it was a clear day. Other witnesses testified to having heard the whistle.

A city ordinance limited the crossing speed to 40 miles per hour.

In the light of this state of facts, the trial court directed a verdict for the defendant or, as is said in Alabama practice, he gave the jury the affirmative charge.[1]

We think the trial judge correctly applied the Alabama law to the facts of the case, and that but little elaboration is needed. It is clear that the plaintiff's husband was negligent. We think it unnecessary to determine whether there were facts that could have supported a jury's finding that the railroad company was also negligent, for under the Alabama law contributory negligence is a complete defense. It is only in a case in which the railroad is negligent *subsequent* to the noncontinuing negligence of the injured party that the defense of contributory negligence is unavailing, or in a case where, after discovery of *continuing* negligence on the part of the injured person, the railroad acts in a wanton or willful manner. Here it is too clear for argument that before the negligent conduct of the deceased ended the defendant's engineer and fireman were doing all within their power to protect Mr. Turner from the results of his own negligence. This then leaves available the defense of contributory negligence, and rules out the

1. The charge of the court to the jury follows:

"As I view this case, it is more than just a question as to whether the Plaintiff can prove that the Defendant The Atlantic Coast Line Railroad Company was guilty of some kind of negligence. I think they would have to prove more than that in this case. I think this testimony, as a whole the great weight or preponderance of it is, that this man Turner, the intestate defendant in this case, brought about his death by his own negligence; and that his negligence was the sole and proximate, proximate means the direct cause of his death, cause of his death. It seems to me like the overwhelming weight of the testimony in this case is that he went on the railroad without first observing the Alabama law, which puts the imperative duty on him to stop, look, and listen, for approaching trains before crossing the railroad crossing.

"I don't think that there was any evidence from which you could properly and rationally reach the conclusion that he did do that. But if he had, gentlemen of the jury, the fact remains on the undisputed testimony in this case, that after he got on the railroad track, for some cause, none of us know, there was no evidence about that, his motor stalled and would not move while he was on the railroad track, and that occurred before the train was in several hundred feet of him, and his companion observed his peril and warned him of the peril, and his companion jumped out of the automobile and warned the driver of the car to get out.

"The law doesn't permit a man to imperil his own life to save his property, even if he had known that the train would come on and smash his automobile all to pieces and destroy it, he could have by exercise of reasonable care and prudence extricated himself from the danger that was imperiling his life and it was his duty to have done so. He failed to do that it seems to this Court. This unfortunate affair that brought about his death was brought about proximately and solely by his own negligence, and for that reason the Court feels that there is no proper question to be submitted to you gentlemen, and for that reason I direct you gentlemen to find a verdict in favor of the Defendant."

theory of recovery for wanton conduct. The recent case of Atlantic Coast Line Railroad Co. v. King [2] has an excellent discussion of wantonness in such circumstances. There Chief Judge Hutcheson, speaking for this court, laid down this proposition as stating the Alabama law on the subject:

"'In order for an act, or omission, to constitute wantonness, the act done or omitted must be done or omitted with the knowledge and present consciousness that injury will probably result.'"[3]

In the case before us, Mr. Turner was negligent in attempting the crossing without looking to see the train approaching; he was negligent in not looking to see the train when his automobile stalled on the tracks; but the negligence that cost him his life was in delaying and attempting to start his automobile while stalled in the path of the train after he had been twice warned by his passenger of his imminent danger.[4]

Here there is no evidence that after the cessation of the deceased's negligence the train crew was in anywise negligent. The evidence is undisputed that the instant [5] the fireman saw the vehicle was stalled he called the engineer, and that the engineer immediately [6] applied the brakes in full emergency application. The fireman said he saw the car stalled when he was 300–400 feet from the crossing, and when the engineer had applied the brakes the train was 200–300 feet away. There were still between three and five seconds left for Turner to clear the tracks after everything possible had been done by the train crew.[7]

Appellant's argument that there is evidence to go to the jury on the theory that the witness Mrs. Phillips, driving alongside the train, said the engineer should have seen the automobile stalled earlier because she estimated she saw it stalled when she had travelled "about" one-fourth of the estimated distance of 900 feet at which the engine had passed her does not rise to the dignity of the scintilla test, for which appellant argues, since it is undisputed that the crew did apply the brakes as soon as they saw the automobile stalled, and whether it was first seen at 300–400 feet or at 400–600 feet is not of any significance.

Nor is there any merit in the contention of the appellant that there was a jury question on the failure of the engineer to reverse his motors. Appellant contends that under the terms of the Alabama statute [8] a failure to reverse the engines could amount to negligence without any evidence that such action would have done any good. Since the only witness to testify on this

2. 5 Cir., 196 F.2d 999, 1001.

3. "Peters v. Southern Ry. Co., 135 Ala. 533, 33 So. 332; Central of Georgia Ry. Co. v. Forshee, 125 Ala. 199, 27 So. 1006; Louisville & N. R. Co. v. Brown, 121 Ala. 221, 25 So. 609; Louisville & N. R. Co. v. Rush, 208 Ala. 516, 94 So. 577; Alabama Great Southern Ry. Co. v. Smith, 196 Ala. 77, 71 So. 455; Roberts v. Louisville & N. R. Co., 237 Ala. 267, 186 So. 457; Louisville & N. R. Co. v. Sunday, 248 Ala. 597, 28 So.2d 796; Louisville & N. R. Co. v. Porter, 196 Ala. 17, 71 So. 334." (Footnote in original, 196 F.2d 1001).

4. There is nothing to the contrary in Pollard v. Stewart, 27 Ala.App. 116, 168 So. 203, because here the decedent did not go onto the tracks free of negligence and he continued to work with his car after he was warned.

5. The fireman testified: "When he stopped on it I hollered to Mr. Justice."

6. The engineer testified "within the second."

7. The minimum would be three seconds if the engine was approximately 200 feet away and if it was going 50 m.p.h.; the maximum would be five seconds if the distance was 300 feet and the speed 40 m.p.h.

8. Title 48, Section 170, Alabama Code:
   "He (the engineer) must also, on perceiving any obstruction on the track, use all the means within his power, known to skillful engineers, such as applying brakes and reversing the engine, in order to stop the train."

point stated that in the case of the diesel locomotive he was operating such a move would not have brought about a quicker stop, there is nothing for the jury to speculate on in this regard; moreover, the language in the statute relating to "reversing engine" is not mandatory, but merely illustrative of measures that a "skillful engineer" might apply.

We think that this unfortunate accident occurred because the plaintiff's husband was negligent in going upon the track without looking to see what would have been apparent to him if he had done so, and then, having placed himself in the peril resulting from the stalling of his automobile he was again negligent in not looking to learn of his peril or, even after he was warned of it, acting to protect his own safety. This negligence brings the case within the rule stated in Western Railway of Ala. v. DeBardeleben, 226 Ala. 101, 145 So. 431, 433, where the Supreme Court of Alabama said:

"This evidence clearly shows that plaintiff's said intestate was guilty of subsequent contributory negligence, after he went upon the track immediately in front of the locomotive, in stopping to look, and that this negligence proximately contributed to his injury and death, and operates to bar the plaintiff's right of recovery on account of the subsequent negligence of the engineer, if it be conceded the engineer was guilty of such ngligence, intestate's negligence continued to the moment of the catastrophe. Birmingham Railway, Light & Power Co. v. Aetna Accident & Liability Co., 184 Ala. 601, 64 So. 44; Louisville & N. R. Co. v. Scott, 222 Ala. 323, 132 So. 29.

"The court, therefore, erred in refusing the affirmative charge requested by the defendant, and for this error the judgment is reversed and the cause remanded."

Under the contributory negligence rule of Alabama, then we must conclude that the trial court properly directed a verdict for the defendant.

The judgment is

Affirmed.