**Willie Gertrude GLASS, as Administratrix of the Estate of Percy Glass, Deceased, Plaintiff-Appellee,**

v.

**SEABOARD COAST LINE RAILROAD COMPANY, Defendant-Appellant.**

**Annie Bess GLASS, as Administratrix of the Estate of Horace G. Glass, Deceased, Plaintiff-Appellee,**

v.

**SEABOARD COAST LINE RAILROAD COMPANY, Defendant-Appellant.**

**No. 71-2136.**

United States Court of Appeals, Fifth Circuit.

March 31, 1972.

---

**1388**

W. W. Conwell, Peyton D. Bibb, Birmingham, Ala., for defendant-appellant.

Neal C. Newell, Francis H. Hare, Hare, Wynn, Newell & Newton, Birmingham, Ala., for plaintiff-appellees.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

PER CURIAM:

This case is before us on consolidated appeals from a jury trial in a diversity case where verdicts of $65,000 were returned for each of two plaintiffs representing the estates of a deceased automobile driver and his passenger who were killed in a railroad crossing accident. The suits were brought under the Alabama Homicide Act, Title 7, § 123, Alabama Code of 1940.

At the accident site, two parallel railroad tracks are crossed by a two-lane paved highway in the community of Pelham, Alabama. The accident occurred at 11:30 A.M. on a Sunday, April 13, 1969. The crossing was protected by automatic red crossing flasher lights. The flasher lights consisted of two alternating red lights on stands containing above them regular cross-arm "railroad crossing" signs. There were two such stands and sets of flashing lights—one on each side of the road and on alternate sides of the railroad tracks. As the automobile driven by Percy Glass approached and reached the tracks, the red flasher lights were on and flashing. One train (No. 308) was stopped in the near track (passing track) from fifty to one hundred feet to the left of the highway and automobile. The automobile attempted to cross the double set of tracks and was struck by train No. 320 which approached from the left on the outside or far track (main line).

Appellant railroad assigns as error the following: (i) the district court erred in not finding that as a matter of law, the negligence of the automobile driver was the sole proximate cause of the accident; (ii) the court erred in not finding the verdicts contrary to the clear weight and preponderance of the evidence and ordering a new trial; (iii) the court erred in not finding that the automobile driver was contributorily negligent as a matter of law; and (iv) the court erred in submitting to the jury the claim of wantonness against the railroad and in its instructions on that claim. We affirm.

## I.

Appellant's contentions in (i), (ii), and (iii) above relating to negligence, proximate cause, and weight of the evidence will be considered together. The district court is affirmed as to each of these assignments of error for the reason that the record contains sufficient evidence to warrant submission of the questions concerning negligence and contributory negligence to the jury and to support the verdicts as they may be based on negligence.

Specifically we find that there was disputed testimony as to whether the automobile stopped prior to entering the crossing as is required by Alabama law. There was also conflicting testimony and inferences as to whether the presence of the stopped train (No. 308) kept the flashing warning lights in operation so as to cancel any new warning that the lights might have provided as train No. 320 approached. It was also proper for the jury to consider other effects that the stationary train (with engine running) might have had, e.g., possibly blocking the vision of the automobile driver or preventing him from hearing the warning signals from the oncoming train.

## II.

The plaintiffs also proceeded on a theory of wanton conduct which was submitted to the jury over defendant's objection. The jury returned a general verdict which did not distinguish between negligence and wantonness. This places the cases in the posture that if the evidence was insufficient to warrant submission of the question of wantonness to the jury, new trials will be necessary. Wilmington Star Mining Co. v. Fulton, 1907, 205 U.S. 60, 79, 27 S.Ct. 412, 51 L.Ed. 708; Krizak v. W. C. Brooks & Sons, Incorporated, 4 Cir., 1963, 320 F. 2d 37, 41; Schultz v. Techumseh Prod-

ucts, 6 Cir., 1962, 310 F.2d 426, 428; Northern Pac. Ry. Co. v. Haugan, 8 Cir., 1950, 184 F.2d 472, 480.

The Alabama test for finding wantonness is well established. See Atlantic Coast Line R. Co. v. King, 5 Cir., 1952, 196 F.2d 999, where, relying on several Alabama decisions, we stated as follows:

"In order for an act, or mission, to constitute wantonness, the act done or omitted must be done or omitted with the knowledge and present consciousness that injury will probably result." 196 F.2d at 1001.

Many Alabama decisions employ the phrase "that injury will probably or likely result." [1]

There was evidence submitted to the jury on the basis of which it could conclude that at the site in question and under the circumstances the following matters were known to the engineer.

(1) From 15 years running, he knew of the crossing, knew that it was in a populous area, and that it was frequently used by automobiles.

(2) He knew that train No. 308 was stopped on the passing track within 50 to 100 feet of the crossing and at a point where at least to some extent it impeded his view of the highway crossing (and might also impede the view of an automobile driver approaching from the direction in which this automobile approached, and might prevent the driver of such automobile from hearing the warning signals of the oncoming train.) Train 308 was a mile in length.

(3) He knew that there were flashing warning signals operating. But also he knew that a train parked as No. 308 was parked, and too close to the crossing, would trigger the warning lights prior to train No. 320's approach and would keep them in operation so as to cancel any new warning that the lights might

[1]. See, e. g. Alabama Great Southern Railroad Company v. Johnston, 1967, 281 Ala. 140, 199 So.2d 840; Terminal Transport Co. v. Central of Georgia Railway, 1961, 272 Ala. 495, 133 So.2d 29; Atlantic Coast Line R. Co. v. Barganier, 1952, 258 Ala. 94, 61 So.2d 35; Atlantic Coast Line R. Co. v. Brackin, 1946, 248 Ala. 459, 28 So. 2d 193; Southern Ry. Co. v. Diffley, 1934, 228 Ala. 490, 153 So. 746.

have given to indicate to the public that a moving train was approaching.

(4) He knew the speed of his own train. Testimony of speed is in conflict —the train crew testified to 40–45 miles per hour, a housewife living next to the track at the crossing testified to 70 miles per hour. Which one or more of these witnesses were to be believed was for the jury and not for trial judge or appellate judges.

(5) Even if the speed were considered to be only 42 miles per hour, the figure referred to by the engineer, train 320 would have been unable to stop short of the crossing had it commenced stopping at the point at which the crossing first came into view. The engineer fixed this point, when a train is parked on the passing track, as 350 feet, or 6 to 7 car lengths from the crossing. Actually the train, at 42 miles per hour, could not even stop short of the crossing had it commenced stopping at the much more distant point at which its passage actuated (or would actuate) the flashing signals. The engineer did not see the approaching car until he reached the engine of the parked train, which, under some of the evidence, was only 40 feet from the crossing. He did not apply the brakes until almost the moment of collision, at which time the front of his engine was at the edge of the crossing. Under all of these circumstances the jury could find 42 miles per hour an excessive speed.

(6) It was raining hard enough to have windshield wipers on.

(7) The engineer's testimony is that he began blowing at the blow signal one-fourth mile from the crossing. But his view of that signal was blocked by train No. 308, and he blew from memory of where the signal was located. The housewife heard the train coming before she ever heard the whistle, and first heard the whistle only a few seconds before the wreck.

The jury was entitled to conclude that under all these circumstances the movement of the train into the intersection without ever slowing its speed created a probability or likelihood of causing injury, not necessarily to the particular victims but to anyone who might be entering the crossing.

The district court did not err in submitting the case to the jury on the claim of wanton conduct.

Affirmed.

BELL, Circuit Judge (dissenting):

I respectfully dissent. Under the settled test, cited in the majority opinion, it is clear to me that the evidence adduced did not rise to the level of proof of wantonness.

It will be remembered that the test requires knowledge and a present consciousness on the part of the engineer that injury would probably result at the site in question under the circumstances obtaining. The circumstances known to the engineer were that flashing warning lights were installed and operating at the crossing and that train No. 320's whistle was sounded and its bell rung as required by Alabama law. Moreover, as train No. 320 approached the crossing, and the engineer saw that train No. 308 might impede the view of the crossing, he started blowing short successive blasts of his whistle. All the while the headlights and oscillating Mars light on the front of train No. 320 were burning. In addition, the speed of train No. 320, 45 miles per hour or less according to all witnesses except one housewife who caught a glimpse of the train through her window next to the track (she estimated 70 m.p.h.), was not in violation of any applicable law or ordinance.

I would hold that the evidence of negligence was insufficient to warrant submission of the case to the jury on the question of a showing of knowledge and consciousness on the part of the engineer of impending likelihood of injury, given his knowledge which is undisputed of the flashing warning signals. It expands the test and stretches credulity to hold that the engineer should have anticipated that the driver would attempt to

cross the track in the face of the flashing signals. The sufficiency of the evidence is a federal question, Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365, 368, and thus we are not bound by the Alabama scintilla rule, assuming *arguendo* that the evidence here of wantonness reaches the scintilla level.

I agree with the majority as to Part I of the opinion but would reverse for a new trial because of error in submitting the case to the jury on the claim of wanton conduct.